OPINION OF THE COURT

Per Curiam.

By this proceeding petitioner seeks to have validated a designating petition filed with the Erie County Board of Elections for the purpose of having his name placed on the official Republican Party primary ballot and voting machines as a candidate for nomination by that party for the office of Councilman in the Town of Orchard Park. The board sustained objections filed against the designating petition for failure of the subscribing witnesses to set forth the assembly district in which they were resident as required by subdivision 1 of section 6-132 of the Election Law, and rejected the petition. Supreme Court, Erie County, granted an order in this proceeding directing the board to validate the petition and place petitioner’s name on the ballot and voting machines, but the Appellate Division (71 AD2d 1047) reversed the lower court’s order and dismissed the validation proceeding. It is undis *18 puted that the Town of Orchard Park is wholly within a single assembly district. The claim is made that by reason of this circumstance the omission of assembly district number should not serve to invalidate the petition and that precedents to the contrary should be overturned.
The precise substantive issue tendered on this appeal has thrice been resolved against appellant’s position in the last three years by this court (Matter of Rutter v Coveney, 38 NY2d 993; Matter of Vari v Hayduk, 42 NY2d 980; and Matter of Morris v Hayduk, 45 NY2d 793). The arguments now articulated by the dissenters were those rejected in Rutter (cf. dissenting opn 38 NY2d 994) and again in Vari. In Morris special emphasis was placed by the appellant on the revisions made in recodification of the Election Law. We nonetheless declined the invitation to overrule our prior decisions, concluding that no change was required by the recodification.
The doctrine of stare decisis does not, of course, demand unyielding resignation to even recent precedent.[1] Policy considerations are inherent in the prudent, considered application of the doctrine. (People v Hobson, 39 NY2d 479.) Whether it is appropriate for the courts to overturn judicial precedent must depend on several factors. Among them will be the nature of the rights and interests at stake and the extent and degree to which action may justifiably have been taken in reliance on the precedent (Matter of Eckart, 39 NY2d 493, 500; People v Hobson, 39 NY2d 479, 488-489, supra). In addition to such familiar considerations but apart therefrom, weight may properly be attached to the relative ease or difficulty of modification or change in the precedent. Invitations to judicial reconsideration carry more weight when addressed to constitutional issues because of the very great difficulty of effecting change by constitutional amendment. By contrast the courts show greater restraint in stepping in to undertake correction of what may be perceived as erroneous determinations with respect to questions arising under legislative enactment. In addition to the relative ease of accomplishing statutory change, this hesitancy may be grounded in either or both of two additional considerations. First, the Legislature has far *19 greater capabilities to gather relevant data and to elicit expressions of pertinent opinion on the issues at hand and its members are properly politically responsive to the electorate. Second, and of greater significance, under our polity of government and distribution of powers, responsibility for making the policy decisions inherent in the adoption of the original legislative provision was, by its very nature, vested in the legislative branch. As we have recently said: "Precedents involving statutory interpretation are entitled to great stability (Matter of Schinasi, 277 NY 252, 265-266; see 20 Am Jur 2d, Courts, § 198). After all, in such cases courts are interpreting legislative intention and a sequential contradiction is a grossly aggregated legislative power. Moreover, if the precedent or precedents have 'misinterpreted’ the legislative intention, the Legislature’s competency to correct the 'misinterpretation’ is readily at hand.” (People v Hobson, 39 NY2d 479, 489, supra.)
Consideration of some of the decisions of our court illustrates the principles involved. A pertinent example is found in Matter of Eckart (39 NY2d 493, supra). In Matter of Cairo (29 NY2d 527) our court had accepted a construction of statute (EPTL 5-3.3) which thereafter was widely criticized. Five years later in Eckart, in an indistinguishable case presenting the same issue, we followed the Cairo precedent with the observation, "[i]f there is to be a constructive change it should come from the Legislature” (39 NY2d 493, 502). Similarly in People v Butts (32 NY2d 946) and again in People v Cicale (35 NY2d 661), we rejected vigorous arguments that in People v Carter (31 NY2d 964) sections 207 and 208 of the Mental Hygiene Law had been erroneously interpreted. While it may be that in the face of continued and continuing legislative inattention or inertia the courts may properly step in to effect a change in statutory interpretation (e.g., Hall v Coburn Corp. of Amer., 26 NY2d 396; followed by Moore v Metropolitan Life Ins. Co., 33 NY2d 304; and then Ray v Marine Midland Grace Trust Co., 35 NY2d 147), such instances are the exception rather than the rule.
It is pertinent that even where the rule of law at issue is of judicial rather than legislative origin, if change by legislative action is available, our courts are hesitant to effect recommended change. Thus in Codling v Paglia (32 NY2d 330) we declined the invitation to substitute a rule of comparative negligence for the much criticized doctrine of contributory negligence. Subsequently the Legislature enacted the desired *20 change (L 1975, ch 69). More recently in Baden v Staples (45 NY2d 889) we rejected importunings to eradicate the asserted error of Seider v Roth (17 NY2d 111; see Simpson v Loehmann, 21 NY2d 305; and Donawitz v Danek, 42 NY2d 138). On this subject, however, to date there has been no legislative action.
In thé present instance deference to the Legislature to enact change, if indeed change there should be, is peculiarly fitting. Insistence on inclusion of the correct assembly district number itself cannot properly be classified as involving any substantial obstacle or threat to the exercise of the constitutional right of franchise. All that needs to be done to assure the unfettered access to that right is to heed the mandate of the statute as uniformly interpreted by the court — i.e., insert the correct assembly or election district number, not a very demanding task. Contrast the unavailability of any such self-help alternative in the instances where judicial relief was denied in Eckart, Cicale, Moore, Codling and Baden. There is nothing to indicate that strict compliance with the precise requirements of this statute as interpreted[2] is not readily accomplished on the great bulk of designating petitions. It is only the careless or inadvertent failure to follow the mandate of statute and case law which gives rise to the complaints that come before us.
To suggest, as do the dissenters, that the number of cases posing this issue which appear on our calendars is significant is not persuasive. There is no indication that this is the tip of any iceberg. Rather the situation is likely to be quite the reverse; because of inherent disposition to contest and the availability and relatively smaller cost of legal services it may more realistically be assumed that the courts are likely to see virtually every instance where our interpretation of this statute is claimed to have worked a deprivation of political rights.
At the jurisprudential level the issue is even clearer. The Legislature has peculiar responsibility under our polity for *21 prescribing the regulation which should guide political affairs and the activities of political parties, subject only to the constraints of constitutional mandate. In the construct of any political philosophy under our polity, to the extent that government is involved in elective processes, the role of the legislative branch must be recognized as paramount. Moreover, whatever reality there may be to assertions of the Legislature’s indifference or unconcern in other narrow areas, there can be no substance to any suggestion that our legislators are disinterested in election matters.[3]
Accordingly, even if one were to be persuaded that the dispositions in Rutter, Vari and Morris were in error, it would be judicially irresponsible for the court to overturn the interpretation of the 1977 recodification of the Election Law announced as recently as one year ago.

. Without conceding that the earlier case was incorrectly decided, it is noted that in any discussion of stare decisis it must be taken, arguendo, that strong arguments can be mounted to support a different result. Were the situation otherwise there would be no occasion to rely on the doctrine.

. It is to be noted that this statute erects a rigid framework of regulation, detailing as it does throughout specific particulars. The statute itself is not "drawn in such general terms that it is evident that the legislative intention is that the courts, by their interpretation, indeed construction, fill in, by a case-by-case approach the skeletal outlines [in which instances] * * * the degree of flexibility in handling statutory precedents is that much the greater”. (People v Hobson, 39 NY2d 479, 490, supra.)

. To state, as does one dissenter, "that decisions construing the Election Law are entitled to less respect as precedents” (dissenting opn, Meyer, J., at p 28) advances a novel proposition. The need for predictable consistency is not diminished merely because the electoral process is implicated. It is true, of course, that election cases are necessarily expedited; the political calendar and the electoral process demand as much. In some instances, however, it is the impact with which one hits a problem rather than the sustained pressure applied, which counts. That less time elapses from start to finish may foreclose the luxury of leisurely reflection and thus, perhaps, limits the opportunities to explore ramifications. To this extent one can agree that particular care should be taken in extrapolating from precedent in these matters. No such instance, however, is presented in the present case; here the precedents are squarely on point.