Persio A. **MOLDONADO**, et al., **Plaintiffs**,

v.

Carmen **RODRIGUEZ**, et al., **Defendants**.

No. 81 Civ. 5532 (RLC).

United States District Court, S. D. New York.

Sept. 9, 1981.

Kresky, Sinawski & Hollenberg, New York City, for plaintiffs; Harry Kresky, New York City, of counsel.

Douglas A. Kellner, Nancy B. McAllister, New York City, for defendants Rodriguez, Spender, Connor and Hodge.

Allen G. Schwartz, Corp. Counsel, New York City, for defendant The Bd. of Elections of The City of New York; Patrick F. X. Mulhearn, Asst. Corp. Counsel, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs have moved by order to show cause for a preliminary injunction which would place their names on the ballot in the September 10th Democratic Primary Election. For the reasons that follow, this motion is denied.

The facts in this case are undisputed. Plaintiffs Grace Hutson and Persio Maldonado, candidates for Democratic District Leader, plaintiffs C. Vernon Mason and other candidates on his slate for judicial delegate, and plaintiffs Grace L. Webster and others on her slate for County Committee Member submitted petitions to the Board of Elections which did not meet the cover sheet requirements of Section 6–134(2) of the New York Election Law.[1] The petitions were not defective in any other way. They contained the requisite number of signatures to obtain entry on the primary election ballot.

The defect in plaintiffs' cover sheets existed despite their retaining an expert to assist in its preparation. Apparently, the expert never appeared at the plaintiffs' campaign headquarters at the time his services were necessary. At approximately

---

1. Section 6–134 provides in pertinent part:

   2. Sheets of a designating petition shall be bound together in one or more volumes .... There shall be a cover sheet attached to each petition consisting of ten or more sheets and each volume thereof. Each cover sheet shall indicate the office for which each designation and nomination is being made, the name and residence address of each candidate, the total number of pages comprising the petition, and the total number of signatures contained in such petition.

10:30 p. m. on July 23, 1981, the last day to file petitions with the Board of Elections the plaintiffs completed the binding of their petitions. They left for the Board of Elections ["the Board"] by automobile and attempted to complete the cover sheet en route. As a result of the illness of one of the campaign workers in the car, it was necessary to stop for twenty minutes. They arrived at the Board at approximately 11:45 p. m., completed the cover sheets immediately, and handed the petitions to the clerk who clocked it in at 11:58 p. m. The last sheet of the petitions was clocked in at 11:59 p. m. When the petitions were immediately rejected because of the defects in the cover sheet, plaintiffs prepared a supplemental cover sheet and at about 12:15 a. m. on the morning of July 24, 15 minutes after the filing deadline, the new cover sheet, which was not defective, was filed.

On August 6, 1981, the Board invalidated plaintiffs' designating petition because of the defects in the cover sheet initially submitted. Thereafter, the plaintiffs brought an action in the New York Supreme Court seeking to overturn the determination of the Board, and on August 25, 1981, that application was denied. On appeal, the Appellate Division, First Department reversed the lower court ruling and explained that:

> The objective of the election laws is to provide qualified voters an opportunity to designate candidates of their choice. The democratic process is not aided by a narrow and technical construction of the election laws .... [*Hutson v. Bass (In re Beltz)*, 442 N.Y.S.2d 517 (App.Div. 1st Dep't 1981)].

The defendants appealed this determination to the Court of Appeals of the State of New York. That court reversed the Appellate Division finding that the state legislature had "erected 'a rigid framework of regulation, . . .'" *Hutson v. Bass*, 54 N.Y.2d 772, 443 N.Y.S.2d 57 at 58, 426 N.E.2d 749 at 750 (Ct. of Ap. 1981), *quoting Matter of Higby v. Mahoney*, 48 N.Y.2d 15, 20 n.2, 421 N.Y.S.2d 35, 396 N.E.2d 183 (1979) which had to be strictly complied with.

Plaintiffs then brought this action alleging that the defendants denied them the right to run for office and to vote as guaranteed by the laws and Constitution of the United States. This suit was brought under the Voting Rights Act of 1965, 42 U.S.C. § 1971 *et seq.*, and the Civil Rights Act, as amended, 42 U.S.C. § 1983. Plaintiffs seek to enjoin the Board from removing the names of plaintiffs and others on their slate from the ballot.

### Voting Rights Act Claim

█ Plaintiffs claim under the Voting Rights Act must be dismissed principally for the reasons set out by the three judge panel in *Williams v. Sclafani*, 444 F.Supp. 895 (S.D.N.Y.1978). That case involved a suit brought in part under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, wherein a three-judge court decided that "Section 5 was not intended to apply to state court decrees which simply construe an already pre-cleared [state] statute." 444 F.Supp. at 904. The decision by the Court of Appeals of New York construed Section 6–134 of the Election Laws and this determination cannot be challenged under Section 5 unless there was a showing that the Election Laws had not been pre-cleared. No such showing has been made here. Moreover, there is no claim here that strict enforcement of the New York Election Laws in this case abridges the right to vote on the basis of race or color. *See Powell v. Power*, 436 F.2d 84, 87 (2d Cir. 1970).

### Civil Rights Claim

Plaintiffs suit under the Civil Rights Act 42 U.S.C. § 1983 must fail for different reasons. Section 1983 permits a suit in federal court by persons whose constitutional rights have been aggrieved under color of state law.

Plaintiffs assert that their constitutional right to vote and to appear on the ballot has been infringed upon by the Board of Elections.

█ The right to vote in a primary election is a fundamental constitutional right. *See Smith v. Allwright*, 321 U.S.

649, 660–62, 64 S.Ct. 757, 763–64, 88 L.Ed. 987 (1944). Integral to the right to vote is the right to appear on the ballot, a right which must be scrutinized under the same test of constitutionality. *See Smith v. Cherry,* 489 F.2d 1098 (7th Cir. 1973), *cert. denied,* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974). Plaintiffs rely principally upon *Williams v. Sclafani,* 444 F.Supp. 906 (S.D.N.Y.1978), *aff'd mem.* 580 F.2d 1046 (2d Cir. 1978) to argue that their fundamental right to vote and to run for office take precedence over rigid enforcement of the technical requirements of the State Election Law. *Williams* involved candidates for City council who when collecting signatures for petitions to place their name on the ballot relied upon the advice of the Board of Elections regarding registration requirements for signatories. As it turned out, this reliance was misplaced. It was later ruled by the state court that the signatures on the petitions were invalid because the signatories were not properly registered. The three-judge court in *Williams* determined that the reliance upon the Board of Elections advice was justifiable and accordingly granted summary judgment to the plaintiff despite no specific finding that the defendants acted with any discriminatory intent.

■ In the case at bar, there is absolutely no indication that the plaintiffs relied upon advice given by the Board of Elections or any other state official to make up the cover sheet in the way they did. The cover sheet requirements were in effect well before the due date for the petition. Moreover, the requirements were clearly applied uniformly among all candidates. This is a clear case of the plaintiffs being unhappy with the straightforward application of a valid state law. On a personal basis, I might agree that the state law could be viewed as arbitrary in its requirements. But in no way does the application of these requirements deny plaintiffs' their constitutional right to appear on the ballot. Plaintiffs' rights would have been honored had they abided by the statute. States have been afforded broad discretion under the Constitution to administer elections. *Williams v. Rhodes,* 393 U.S. 23, 29, 89 S.Ct. 5,

9, 21 L.Ed.2d 24 (1968). I am not convinced that the requirements of the State Election Law as applied here gives rise to a constitutional violation sufficient to strike it down. Clearly, other candidates were able to collect signatures within the constraints of the law. No unlawful conduct of a fraudulent or discriminatory manner has been alleged here. Nor is there a claim that the cover sheet requirements were inadequately publicized or otherwise kept from the plaintiffs. *See, e. g., Briscoe v. Kusper,* 435 F.2d 1046 (7th Cir. 1970). Plaintiffs simply were not able to comply with the law. It is unfortunate that their failure to comply was due to the illness of a volunteer or the unreliability of a so-called expert. Their claim is really one requesting leniency under the stringent state requirements. The New York courts have spoken and denied such leniency. Under the circumstances, I do not believe there exists a constitutional claim here. As a result, I am constrained to dismiss plaintiffs' Section 1983 claim. To do otherwise would contravene the Second Circuit's ruling in *Powell v. Power,* 436 F.2d 84, 86 (2d Cir. 1970) which counseled against federal courts "tinkering with the state's election machinery" under the guise of Section 1983.

Accordingly, plaintiffs' motion for a preliminary injunction is denied and the complaint dismissed.

SO ORDERED.