Ira GAMMERMAN, Budd Goodman, Bruce McM Wright, Felice K. Shea, Carmen B. Ciparick, Amos Bowman, Edward J. Greenfield, Jawn A. Sandifer, James J. Leff, Josephine Suarez, Alfred Placeres and Frederick E. Samuel, Plaintiffs,

v.

BOARD OF ELECTIONS OF the CITY OF NEW YORK, Defendant.

No. 82 Civ. 6913 (RWS).

United States District Court, S.D. New York.

Oct. 20, 1982.

Botein, Hays, Sklar & Herzberg, New York City, for plaintiffs; Paul H. Asofsky, Nancy B. Mac Allister, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for Board of Election; Susan Rosenberg, James F.X. Hilen, New York City, of counsel.

## OPINION

SWEET, District Judge.

First of all, I want to thank all counsel for their skill and assistance in helping the court deal with this problem on very short notice. The events which give rise to this proceeding occurred late in September, and early in October. The questions obviously relate to the election to take place twelve days from now.

There has been some indication here in open court that the relief sought may be difficult to achieve even if granted at this very moment. There is, of course, apparent public interest in this issue that involves what has been characterized as a "blunder" in complying with the election laws which has resulted in the barring of some ten state court judges from a place on the Democratic line on the ballot. These issues present deep questions of public policy, constitutional interpretation, and the significance and weight of the election laws.

The adjustment of the power to decide these issues is delicate, and it lies at the heart of our democratic process. Obviously, I have a desire for greater contemplation, and a more thorough analysis, and that desire is virtually overpowering.

However, the sweep of these events and the inexorable passage of time deny me, I believe, the privilege of any further reflection which would permit me to reserve my decision. In fairness to the parties, and to the public, I believe these issues must be decided now.

To state the resolution in overall simple terms, nonlegal terms, without the rules, there is no game. The motion for a preliminary injunction will be denied. The following are my findings of fact and conclusions of law.

The plaintiffs allege that they have been deprived of their right to vote and to pursue public office in violation of Title 42, United States Code section 1983, and they seek an order from this court directing the Board of Elections of the City of New York to print their names on the ballots to be used at the general election on November 2, as candidates for the Democratic Party for the office of Justice of the Supreme Court of the State of New York for the First Judicial District.

The parties to this proceeding are nine judicial candidates, candidates for judicial office. Two are voters, and one the chairman of the Democratic Party. The defendant is the Board of Elections of the City of New York. There have been some intervenors whom I have also heard.

On September 29, the Democratic Party held its judicial convention in the First Judicial District, and at that convention the plaintiffs Bowman, Greenfield, Leff, and Sandifer as well as Fraiman were nominated without opposition. Each of these plaintiffs is a sitting Justice to the Supreme Court whose original term will expire on December 31, 1982. These plaintiffs were also nominated without opposition by the Republican, Liberal and Conservative Parties.

The plaintiffs Ciparick, Shea and Wright were also nominated without opposition. Ciparick is a judge of the Criminal Court of the City of New York, Shea and Wright are judges of the Civil Court of the City of New York. The three were also nominated by the Liberal Party and will appear on the ballot in November regardless of the outcome of this action.

The plaintiffs Gammerman and Goodman were the last two nominees of the convention. They are presently judges of the Civil Court of the City of New York, and have not been nominated by any other political party, and, therefore, will not appear on the ballot unless this determination is overturned on appeal.

Under New York Election Law section 13–100(23), a certificate of party nomination made at a judicial district convention for an office to be filled at the general election must be filed by September 30. Under Election Law section 1–106, failure to file such a certificate by the prescribed date is, in the language of the state, a "fatal defect." That is, the candidate is precluded from appearing on the ballot.

On October 1, one day after the statutory deadline had passed, convention officials filed the certificate for the plaintiffs. Because of the late filing the Board of Elections rejected the certificate. Plaintiffs then instituted a state court action seeking access to the ballot. In a six-one memorandum decision the New York Court of Appeals held that the defect of late filing is not curable and accordingly denied the relief sought there.

There is no factual dispute of any consequence presented to me. The result of the blunder has been harsh and dramatic. It has been argued that it is not a garden variety error in the electoral process. I believe, however, that it is precisely that, except, of course, the consequences of the error are very substantial.

There is no question but that since the amendment of the Election Law section 1–106 in 1969 the New York courts have strictly adhered to the mandatory filing requirement and have declined to direct the Board of Elections to accept the names of late filers. See, e.g., Carr v. New York State Board of Election, 40 N.Y.2d 556, 388 N.Y.S.2d 87, 356 N.E.2d 713 (1976); Tobin v. May, 72 A.D.2d 648, 421 N.Y.S.2d 441 (3rd Dept. 1979); Seward v. Reardon, 72 A.D.2d 645, 420 N.Y.S.2d 945 (3rd Dept. 1979); Matter of Spencer, 71 A.D.2d 1062, 420 N.Y.S.2d 809 (3rd Dept. 1979).

The plaintiffs argue that the "fatal defect" provision of section 1–106 violates the first and fourteenth amendments. I have concluded, however, that that provision is not repugnant to federal constitutional law.

■ The states in my view have a compelling interest in preserving the integrity of their electoral process. American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); Bowe v. Board of Election Commissioners, 614 F.2d 1147 (7th Cir.1980); Richards v. Lavelle, 620 F.2d 144 (7th Cir.1980). Election regulations often implicate the fundamental rights of individuals to vote, to seek office, and to associate. However, such regulations do not always have a substantial impact on those fundamental rights. Here, for example, requiring candidates to file certificates in a timely fashion is not unduly burdensome, and it is not disputed that the filing serves the legitimate state interest of providing an orderly election procedure. The question is whether the state can enforce this requirement by the sanction of removal from the ballot. In other words, whether or not there is a rational basis for the requirement imposed by the statute.

Prior to the amendment of the section at hand in 1979, late filing was not a "fatal defect," and various factors could be considered to determine whether or not lateness was excusable. See, e.g., Lauer v. Board of Elections, 262 N.Y. 416, 187 N.E. 561 (1933); Brackley v. Donohue, 2 A.D.2d 868, 156 N.Y.S.2d 133 (1956); Smith v. Board of Trustees of Village of Fort Edward, 1 A.D.2d 908, 149 N.Y.S.2d 558, aff'd, 1 N.Y.2d 690, 150 N.Y.S.2d 618, 133 N.E.2d 840 (1956). The purpose of the amendment making the failure to file on a timely basis fatal was described by the New York Department of State in the legislative bill jacket with which I have been provided and to which counsel on both sides very heavily have cited. The amendment was to insure the prompt filing of certificates, making the time limits absolute and not a matter subject to the exercise of discretion by the courts. The Department of State stated, "The purpose of the bill is to overcome the trend of recent court decisions which have had the effect of impairing the mandatory nature of the timetable." It appears that prior practices led to concerns that gave rise to the amendment.

I note that neither my research in the time available, nor the Department of State recommendation, disclosed any factual analysis of the concerns to which I have just adverted. However, I think in the words of counsel it must be obvious that the overtones of political involvement tended to undermine the confidence in the court determinations, and that this basis for the legislation is an index of the sensitivity of the issues with which we are confronted this afternoon.

■ However, dealing with this issue I am compelled, I believe, to defer to the

State Legislature's determination that a mandatory deadline was necessary. Obviously, the orderly sequence of events in a political time-table is a rational basis for the imposition of an absolute deadline. In fact, apparently there was no other way for the Legislature to implement that time-table. The Legislature in adopting the amendment very unambiguously expressed its determination that a non-mandatory scheme failed to further a very legitimate state concern, namely, the orderly progression of candidates to public office or party position.

The United States Supreme Court in *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), upheld a state election law which required voters to register by a certain date, and those who failed to meet the deadline were barred from voting in the primary. The Court found that the limitation was not so severe as to constitute an unconstitutionally onerous burden on the exercise of the franchise or on the freedom of the political association. There, as here, the plaintiffs could have complied with the regulation but did not.

Of course, here there is no question of discrimination, and indeed, counsel have pointed out that this result is equally applicable to other candidates that have been faced with similar problems.

There is no question on this record but that the mistake was inadvertent, and the consequences are, as I have indicated, very substantial and dramatic and most unfortunate. I feel great sympathy for the plaintiffs, particularly those who are not on the ballot at all, but I feel, as counsel has indicated to me, that I must be guided by the reasoning of our Circuit as set forth in *Powell v. Power*, 436 F.2d 84, 86 (2d Cir. 1970). There, the court said:

> Were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies and certificates of election for all manner of error and insufficiency under state and federal law. Absent a clear and unambiguous mandate

from Congress, we are not inclined to undertake such a wholesale expansion of our jurisdiction into an area which, with certain narrow and well defined exceptions, has been in the exclusive cognizance of the state courts.

It is particularly more direct in this instance where the very issue was taken away from the state courts by the State Legislature.

I think the result here is harsh, as it frequently is in Election Law cases. Here, as in *Moldonado v. Rodriguez*, 523 F.Supp. 177 (S.D.N.Y.1981), the application of the state law does not deny the plaintiffs their constitutional rights. Like Judge Duffy in *Moldonado*, I am not convinced that the requirements of the Election Law give rise to a constitutional violation under these circumstances.

▊ Finally, I believe that the litigation of these questions in this forum has been barred by the principles of res judicata and collateral estoppel. The constitutional issues presented here were clearly raised in the state court. The litigants there had a full and fair opportunity to litigate those issues, and the Supreme Court in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) has held that the principles of res judicata and collateral estoppel apply equally in section 1983 actions as in other cases. Therefore, the preclusive effect must be given to the determination of the New York State courts in this matter.

The Second Circuit came to the same conclusion in *Thistlethwaite v. City of New York*, 497 F.2d 339 (2d Cir.), *cert. denied*, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974). In that case the same section 1983 allegations presented to the federal court had been at issue and decided in the state court action. The Second Circuit noted that "a perusal of the briefs submitted" to the state court showed that the same actions of the City were assailed "on its face and as applied to appellants," and that "the assault was broadly based and broadly considered." The same I think is true here.

Point III of the brief submitted to the Appellate Division and the Court of Appeals argued that the mandatory filing

deadlines violated the first and fourteenth amendments of the Constitution, so that the basis of the lawsuit is precisely the same as to the judicial candidate plaintiffs. As to the voter plaintiffs, I consider that the issues have been presented carefully, completely and adequately litigated in state courts and that therefore the voter plaintiffs are barred by collateral estoppel.

Finally, I do note that there is a serious question as to whether relief could be granted at this stage. There has been something spread upon this record that indicates that there would be difficulty in achieving the relief sought by the plaintiffs. However, I conclude that the requirements for preliminary injunctive relief have not been met because there is no likelihood of success on the merits, nor is there a substantial question which makes this a fair ground for litigation, particularly in the light of the state court determinations.

Accordingly, the plaintiffs' motion for a preliminary injunction is denied and the defendant's motion to dismiss is granted. Judgment will be entered in accordance with this opinion.