**Sonia JOHNSON, Citizens Party Candidate For President of the United States of America, Susan Bewley, Patricia Hughes, Andrea Natalie and Desmond Michael Kahn, Plaintiffs,**

v.

**Mario CUOMO, Governor of the State of New York, the State of New York and George D. Salerno, Chairman, State Board of Elections, Defendants.**

No. 84–CV–1374.

United States District Court, N.D. New York.

Oct. 23, 1984.

Walter, Thayer & Long, Albany, N.Y., for plaintiffs; Lanny E. Walter, Albany, N.Y., of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., for defendants; James McSparron, Deputy First Asst. Atty. Gen., Paul D. Silver, Asst. Atty. Gen., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Senior District Judge.

The complaint in this action alleges that four specific sections of the New York Election Law placed unconstitutional burdens upon plaintiffs' voting and associational rights in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, and deprivation of the right to equal protection of the law under the Fourteenth Amendment. The specific portions of the New York Election Law challenged are Sections 1–104(3), 6–138(1), 6–140(1), 6–142(1), all set forth in 17 McKinney Edition (1978). The complaint was filed on September 28, 1984. A motion by the plaintiffs, returnable October 12, 1984, for a preliminary injunction was then filed upon which oral argument was heard in Chambers on that date. The motion seeks preliminarily, pending adjudication on the merits of the unconstitutional claims alleged in the complaint, an injunction directing the New York State Board of Elections to certify to each New York County Board of Elections the names of and residences of Sonia Johnson and Richard Walton as candidates of the Citizens Party for President and Vice President of the United States, and directing such State Board of Elections to prepare a ballot including such names for such offices in time for the general elections on Tuesday, November 6, 1984. An Order signed by me was filed on October 19, 1984, denying and dismissing this motion for a preliminary injunction. That Order

stated that this memorandum-decision and order, setting forth the reasons for such denial, with findings of fact and conclusions of law, would be filed on Tuesday, October 23, 1984 at 3:30 p.m.

The factual background shall be set forth briefly. The Citizens Party describes itself as a national progressive political party. Its first candidates for President and Vice President of the United States were on the ballot in thirty (30) states for the 1980 Presidential election and received a total of 236,148 votes. Sonia Johnson, the lead plaintiff in this action, was designated in 1984 as the candidate of the Citizens Party for the office of President of the United States of America. It is stated in the plaintiffs' substantial memorandum of law that Sonia Johnson has qualified for the ballot in seventeen (17) states and has litigation pending in three other states to secure a ballot position for the high office she seeks. Efforts were made by party representatives and supporters on her behalf and for Richard Walton as Vice President candidate to obtain the necessary 20,000 signatures with a minimum of 100 from one-half of the thirty-two (32) New York State Congressional districts as required by the New York Election Law for independent nominations. Such efforts were unsuccessful. *See* N.Y. Election Law § 6–142(1). Admittedly, only 6,000 signatures were obtained on the nominating petition, and it was not submitted to the New York State Board of Elections until September 28, 1984, the same date the complaint in this action was filed in this federal district court. The statutory date for the filing of an independent nomination petition was no later than September 18, 1984. *See* N.Y. Election Law § 6–158(9). Thomas W. Wallace, Executive Director of the New York State Board of Elections, has submitted an affidavit in opposition to the preliminary injunction motion. Attached thereto is Exhibit 1, the Determination of the State Board of Elections, dated October 2, 1984. It states that the independent nominating petition naming Sonia Johnson and Richard Walton as President and Vice President of the United States respectively is deter-

mined to be null and void since it was not timely filed, and it is not necessary to consider said petition with respect to form and content.

At the oral argument on the motion, Assistant Attorney General Paul D. Silver, for the defendants, stated that irreparable harm, an essential element for the grant of a preliminary injunction under Court of Appeals, Second Circuit rulings, would not be contested. However, the position, as in the detailed opposition brief, was maintained strongly that the other requisites under Second Circuit rulings, either the likelihood of success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation with a balance of hardships tipping decidedly toward the plaintiffs have not been met. Also, as urged at the oral argument by Assistant Attorney General Silver, it was conceded on the record by Attorney Walter that the Eleventh Amendment to the United States Constitution barred the maintenance of the action against the State of New York. Accordingly, the complaint was dismissed on the record against the named defendant State of New York. The court appreciates these concessions, and the submissions of competent briefs with helpful review and analysis of federal and state cases pertinent to the constitutional problems presented in relation to the particular New York Election Law provisions applicable to the situation.

There is raised for the defendants a substantial threshold question that the failure to timely file the nominating petition at issue herein renders moot the plaintiffs' constitutional challenges to the specified New York Election Law statutes. As noted by the attorney for the defendants, it is very significant that there is no challenge by the plaintiffs to the New York Election Law § 6–158(9) prescribing that an independent nomination petition shall be filed not later than seven weeks before the general election. It is evident that a time period, at least of this extent, is permissible and necessary for the checking and processing of independent nominating peti-

tions and for the orderly preparation of the ballot for the general election. The support for mootness comes from the United States Supreme Court ruling that if a candidate is absolutely and validly barred from the ballot by one provision of the laws, he cannot challenge other provisions as applied to other candidates. *Storer v. Brown,* 415 U.S. 724, 736–737, 94 S.Ct. 1274, 1282, 39 L.Ed.2d 714 (1974); *see also Gammerman v. Bd. of Elections of City of New York,* 550 F.Supp. 1031 (S.D.N.Y. 1982). There is reservation on my part to proceed, but in view of clear United States Supreme Court rulings on statutes similar to the New York ones in issue here, the better course, in my judgment, is to reach evaluation of the New York Election Law statutes in regard to showing at this stage of their unconstitutionality. In agreement with the defendants, the review standard for these statutes shall be the "rational basis" test. *Storer v. Brown, supra,* 415 U.S. at p. 730, 94 S.Ct. at p. 1279.

The United States Supreme Court recognized in a noted case involving state requirements for nominating petitions, *Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983), that not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or choose among candidates. The opinion of the court in *Anderson,* quoted this statement from *Storer v. Brown, supra,* 415 U.S. at p. 730, 94 S.Ct. at p. 1279, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." There has been recognition by the Supreme Court that there is an important state interest in requiring some preliminary showing of a modicum of support before printing names on the ballot, and to prevent the clogging of its election machinery and to avoid voter confusion. *See Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971); *Bullock v. Carter,* 405 U.S. 134, 145, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). These principles

and guides shall be followed in the consideration of the challenged New York Election Law statutes.

New York Election Law § 1–104(3) defines the term "party" to mean any political organization which at the last preceding general election for Governor polled at least fifty thousand (50,000) votes for its candidate for Governor. The achievement of this minimum confers official status to a party, and allows it to participate in the primary process instead of the independent nomination petition course for its candidates as provided in § 6–138(4). A general election for the high office of Governor in New York State attracts substantial numbers of voters to the polls, and I find the minimum of fifty thousand (50,000) to be fair and sensible, and by no means an unconstitutional obstacle to qualify for the privilege of official party status. The Citizens Party did not achieve official party status in the New York 1982 gubernatorial election. Impressive support for this particular New York requirement is stated in *American Party of Texas v. White,* 415 U.S. 767, 782–83, 94 S.Ct. 1296, 1306–07, 39 L.Ed.2d 744 (1974):

> But we think that the State's admittedly vital interests are sufficiently implicated to insist that political parties appearing on the general ballot demonstrate a significant measurable quantum of community support. So long as the larger parties must demonstrate major support among the electorate at the last election, whereas the smaller parties need not, the latter, without being invidiously treated, may be required to establish their position in some other manner.

*Accord, Anderson v. Celebrezze, supra,* 460 U.S. at 788, n. 9, 103 S.Ct. at 1570, n. 9. Likewise, I find that this reasoning justifies approval of New York Election Law § 6–142(1) requiring that an independent nominating petition must be signed by at least twenty thousand (20,000) voters, of whom at least one hundred (100) shall reside in each of one-half of the Congressional districts of the State. The number of

twenty thousand (20,000) is not an unreasonable requirement in view of the large New York State population. The requirement to obtain at least one hundred (100) signatures from residents of seventeen Congressional districts, although undoubtedly necessitating the availability of manpower and travel energy, cannot be considered unconstitutional. Similar distribution requirements were struck down in *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), but only because the required signatures were to come from a certain number of counties which varied greatly in population, and thus there was violation of the "one voter, one vote" principle. *See also Blomquist v. Thomson,* 739 F.2d 525 (10th Cir.1984). These cases are inapplicable to the situation here since New York State's Congressional Districts have been judicially found by the State's highest court to have nearly equal population. *Moritt v. Governor of the State of New York,* 42 N.Y.2d 347, 351, 397 N.Y. S.2d 929, 366 N.E.2d 1285 (1977).

■ Attorney Walter in his brief and at the oral argument stressed much more forcefully his unconstitutional challenge to New York Election Law §§ 6–138(1) and 6–140(1) than the New York Election Law statutes above discussed. New York Election Law § 6–138(1) provides that the name of a person signing an independent nominating petition shall not be counted, if the person voted at a primary election for the same office for which the petition purports to nominate a candidate, or that person has signed another petition designating or nominating the same or a different person for the same office. In this instance, the effect of this statute prevented persons who voted in the New York April 1984 Presidential primary election, or signed a petition for any other candidate for the Presidency from signing the independent nomination petition of Sonia Johnson and Richard Walton. Restrictions of this kind have been expressly upheld by the United States Supreme Court. *American Party of Texas v. White, supra,* 415 U.S. at 785, 94 S.Ct. at 1308; *Anderson v. Celebrezze, supra,* 460 U.S. at 801, n. 29, 103 S.Ct. at 1576. Such

a policy reflects a legitimate and approved interest to confine each voter to a single nominating act.

■ New York Election Law § 6–140(1) requires that a person who witnesses a signature to a nominating petition must be a qualified voter of the State and qualified to sign the petition. This means that a person who voted in the Presidential New York primary in April 1984, or who signed another nominating petition could not witness such signatures. The plaintiffs complain that this restriction placed an unfair and unconstitutional burden upon the candidacy of Sonia Johnson. I find this witnessing restriction a reasonable one that helps protect the integrity of the state nominating process with a proper additional safeguard in the signature canvassing. It prevents the signature canvassing from becoming free-wheeling and irresponsible. Further, there is an alternative method of witnessing in § 6–140(2). A form is authorized by this Section that allows the signature page of the petition to be sworn to before a Notary Public or Commissioner of Deeds. This alternative is not shown to be an impractical assistance to the signature gathering. *See American Party of Texas, supra,* 415 U.S. at p. 787, 94 S.Ct. at 1309. Also, it should be noted that persons who are not qualified to witness signatures are, as pointed out by the defense, free to solicit signatures for a nominating petition, as well as being able to engage in any other political activity for such candidates in whom they are interested. The limitation only affects the witnessing of signature, and, in my judgment, is permissible and not in violation of the federal Constitution.

Mention should be made of the earnest argument advanced for the plaintiff by Attorney Walter under a totality of circumstances concept. The contention is that many of Sonia Johnson's eventual supporters had initially supported Jesse Jackson and either signed his nominating petition, authorized to be circulated in January 1984, for the New York April primary or voted for him at the April primary. Thus, such persons would be disqualified from signing

or witnessing signatures of others on the Johnson-Walton nomination petition that could not be circulated until August 1984. It is argued that to avoid this problem Sonia Johnson and the Citizens Party supporters would have to begin organizing petition canvass in December 1983, or else try to organize volunteers before January 10, 1984 to discourage persons from supporting Jesse Jackson, or some other candidate in the April 1984 primary. I find these arguments unpersuasive and conjectural with no resemblance to the facts in the *Anderson* case. The circumstances of the real political world pointed out are remote and have no relationship to the specific statutes challenged herein.

My Order of October 19, 1984, denying and dismissing the motion of the plaintiffs and this memorandum-decision and order remain as it must be in the preliminary injunction context. *See University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). I am firm in my belief that the plaintiffs have not demonstrated either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the plaintiffs. These settled standards of the Second Circuit for the preliminary injunctive relief sought have not been met. *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Mattel, Inc. v. Azrak-Hamway, International, Inc.,* 724 F.2d 357, 359 (2d Cir.1983). I agree totally with the Supreme Court principle that new parties struggling for their place must have the time and opportunity to organize in order to meet reasonable requirements for ballot position, just as the old parties have had in the past. *Williams v. Rhodes,* 393 U.S. 23, 32, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968).

My conclusion of law is that the New York Election Law statutes challenged herein afford that opportunity and are supported by Supreme Court approval of similar statutes. My findings of fact are contained herein. It is unlikely unconstitutionality can be shown on the merits or a serious question presented in that regard. The denial and dismissal Order of October 19, 1984 is reaffirmed. In view of the Notice of Appeal filed by the plaintiffs to the Court of Appeals, Second Circuit, from that October 19, 1984 Order, the Clerk is directed to send by expedited mail a copy of this memorandum-decision and order to the Clerk of that court. I treat the complaint and motion as filed in good faith and possessing arguable merit. F.R.Civ.P. 11 sanctions are denied.

It is so Ordered.