Carl E. PERSON, Plaintiff–Appellant,

Christopher Earl Strunk, Proposed Intervenor–Plaintiff–Appellant,

Mostafa Adam, Movant,

v.

NEW YORK STATE BOARD OF ELECTIONS, Douglas A. Kellner, individually, Commissioner Douglas A. Kellner, in his official capacity as Commissioner of the New York State Board of Elections, Neil W. Kelleher, individually, Commissioner Neil W. Kelleher, in his official capacity as Commissioner of the New York State Board of Elections, Helena Moses Donohue, individually, Commissioner Helena Moses Donohue, in her official capacity as Commissioner of the New York State Board of Elections, Evelyn J. Aquila, individually, Commissioner Evelyn J. Aquila, in her official capacity as Commissioner of the New York State Board of Elections, Defendants–Appellees.

Docket No. 06–4513–cv.

United States Court of Appeals, Second Circuit.

Argued: Oct. 17, 2006.

Decided: Oct. 18, 2006.

142

Carl E. Person, New York, NY, pro se, for Plaintiff–Appellant.

Todd D. Valentine, New York State Board of Elections, Albany, NY, for Defendants–Appellees.

Before KEARSE, SOTOMAYOR, and B.D. PARKER, Circuit Judges.

PER CURIAM.

Plaintiff-appellant Carl E. Person, a candidate for Attorney General of the State of New York, appeals from an order of the United States District Court for the Southern District of New York (Batts, *J.*) denying his motion for a preliminary injunction. Person sought to enjoin the enforcement of provisions of the New York State Election Law concerning payment to individuals collecting signatures for election petitions, *see* N.Y. Elec. L. § 17–122, and the assignment of official status to political parties, *see* N.Y. Elec. L. § 1–104(3), and to require defendants to place his name on the ballot for the November 7, 2006 general election as an independent candidate for New York State Attorney General, without requiring the submission of any nominating petitions signed by New York voters.

At the outset, we note that, as in *Rockefeller v. Powers*, 78 F.3d 44 (2d Cir.1996), our decision here is "rendered with considerably less elaboration than is found in a typical opinion," *id.* at 45, due to the short time frame. Person filed his notice of appeal, along with a motion to expedite the appeal, on September 29, 2006; his motion was granted, and briefing of the appeal was complete on October 16; the appeal was argued on October 17, and is being decided immediately.

■ We review a district court's denial of a preliminary injunction for abuse of discretion, "which usually consists of clearly erroneous findings of fact or the application of an incorrect legal standard." *López Torres v. N.Y. State Bd. of Elections*, 462 F.3d 161, 183 (2d Cir.2006) (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2d Cir.2003)). Because we find that Person has no likelihood of success on the merits, we hold that the district court did not abuse its discretion in denying his motion for a preliminary injunction.

■ Person first contends that New York Election Law section 17–122(1) prohibits payment of any compensation to individuals hired to circulate electoral petitions, in violation of the Supreme Court's decision in *Meyer v. Grant*, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988). We disagree with Person's construction of this provision. Section 17–122(1) makes it a misdemeanor for any person to

> [p]ay[ ], lend[ ], contribute[ ] or promise[ ] to pay, lend or contribute any money or other valuable consideration to or for any voter, or to or for any other person, to induce such voter to sign a petition for the designation of a candidate for party nomination or for election to a party position to be voted for at a primary election, or to induce such voter to sign a petition for opportunity to ballot at a primary election or to induce such voter to sign an independent nominating petition for public office.

N.Y. Elec. L. § 17–122(1). This provision has long been interpreted in New York State as not imposing an impermissible burden on vote-gathering because it does "not prohibit[ ] the procurement of signatures either by volunteers or paid workers." *People ex rel. Beckerman v. Doe*, 31 N.Y.S.2d 217, 220–21 (Sup.Ct. N.Y. County 1941). Although remuneration to canvassers "may not be contingent on the number of signatures obtained," they "may still be paid on a per diem, weekly or other time basis." *Id.* at 221. Accordingly, section 17–122(1) is consistent with the Supreme Court's ruling in *Meyer*. Indeed, if this provision did what Person contends it does—flatly prohibit all forms of payment to those who circulate election petitions—it would render superfluous Election Law section 17–122(4), which specifically prohibits only the per-signature payment to election workers. Because "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause,

sentence, or word shall be superfluous, void, or insignificant," *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (internal quotation marks omitted), we decline to read the statute in the manner Person proposes.

■ Second, Person argues that New York's section 17–122(4) prohibition on per-signature payment of those employed to circulate election petitions does not comport with *Meyer*, which prohibited states from imposing unduly burdensome and unjustified restrictions on the payment of petition signature collectors. *See Meyer*, 486 U.S. at 426–28, 108 S.Ct. 1886. We join the Eighth and Ninth Circuits in holding that a state law prohibiting the payment of electoral petition signature gatherers on a per-signature basis does not per se violate the First or Fourteenth Amendments. *See Prete v. Bradbury*, 438 F.3d 949 (9th Cir.2006); *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir.2001). Like our sister circuits, we find the record presented to us provides insufficient support for a claim that the ban on per-signature payment is akin to the complete prohibition on paying petition circulators that was deemed unconstitutional in *Meyer*, or that the alternative methods of payment it leaves available are insufficient. *See Prete*, 438 F.3d at 962; *Initiative & Referendum Inst.*, 241 F.3d at 617–18. Person's argument that per-signature payment is, from a business perspective, the best incentive to campaign workers is insufficient to show any likelihood of success on his claim that this regulation imposes an unconstitutional burden on the exercise of his rights when balanced against the state's interest in preventing fraud in the gathering of signatures.

■ Finally, Person claims that the assignment of official status only to those parties whose gubernatorial candidates re-

ceived 50,000 votes in the last election violates his, and his party's, First and Fourteenth Amendment rights, because such a requirement "forc[es] them to nominate and place their emphasis upon obtaining votes for their gubernatorial candidate instead of a different statewide candidate they might have preferred to nominate and support...." Essentially, Person claims that the state's requirements for official party status unconstitutionally limit smaller parties' access to the ballot. We have noted that political parties have no constitutional right to appear on a ballot, *Prestia v. O'Connor*, 178 F.3d 86, 88–89 (2d Cir.1999), and the Supreme Court has held that states may limit ballot access in order to prevent "the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong plurality, of those voting, without the expense and burden of runoff elections.... Moreover, a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

To this end, courts have upheld an array of restrictions on ballot access. *See, e.g., Am. Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) (upholding a Texas law requiring candidates, in effect, to collect within fifty-five days signatures totalling one percent of the total gubernatorial vote in the last election); *Rainbow Coal. of Okla. v. Okla. State Election Bd.*, 844 F.2d 740 (10th Cir.1988) (upholding an Oklahoma law requiring putative political party to collect signatures equal to at least five percent of the total votes cast in the last general election, even though the signature requirement fluctuated between gubernatorial and presidential elections); *see also Johnson v. Cuomo*, 595 F.Supp. 1126 (N.D.N.Y.1984) (upholding New York Election Law section 1–104 against a similar constitutional challenge).

Person has not established a likelihood of success on his claim that the state's regulations for assigning official status only to those parties whose candidates receive the requisite showing of support in the election of the highest statewide officeholder are unreasonable. Contrary to Person's argument, it does not appear that the state is forcing his party to divert its resources in any particular way, nor that it is impermissibly interfering with the internal management of parties' affairs, because parties are free to choose not to seek official status. Accordingly, based on the sparse record presented by Person, we find this provision violates neither Person's nor, to the extent they exist, his party's rights.

For the foregoing reasons, the district court's denial of Person's motion for a preliminary injunction is affirmed.

The Court also has before it an appeal of the district court's denial of Christopher Earl Strunk's motion to intervene, and a motion to intervene on appeal by Mostafa Adam. This Court reviews a district court's denial of a motion to intervene for abuse of discretion. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (1994). In order to intervene in a case, an intervenor must have a "direct, substantial, and legally protectable" interest in the litigation. *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (citing *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990)). Here, the proposed intervenors allege little more than an abstract interest in the democratic process in New York State. We therefore hold that the district court did not abuse its discretion in denying Strunk's motion to intervene, and we reject Adam's motion to intervene in this appeal.