Memorandum.
The order of the Appellate Division is affirmed, without costs. We conclude that New York State may constitutionally require a showing of State-wide support in addition to a showing of numerical support so long as no *350 substantial burden is imposed on access to the primary ballot (Williams v Rhodes, 393 US 23, 34). The United States Supreme Court has recognized that there is an important State interest "in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization’s candidate on the ballot” (Jenness v Fortson, 403 US 431, 442). The States may therefore fix reasonable standards to assure that a candidate has some level of popular support. Subdivision 5 of section 136 of the Election Law does not impose an unconstitutionally onerous burden on a Democratic Party candidate, such as petitioner, seeking to place his name on a primary ballot. There are 39 Congressional districts in New York State and the statute requires only that a candidate have 100 signatures from each of one half of those Congressional districts. Thus, 2,000 of the required 20,000 signatures must be distributed geographically among 20 Congressional districts and the remaining 18,000 may come from one district or any combination of districts. We do not think that this requirement is the type of restriction on access to the ballot which is invidiously discriminatory and violative of the equal protection clause (see Williams v Rhodes, supra).
On the other hand, the geographical distribution requirement serves to preclude a concentration of party members in one area of the State that may, solely for petition purposes, exercise exclusive control over the nominating process. The challenged statute is thus a permissible method of preventing manipulation of the ballot by superficial petition signing. The statute guarantees that those seeking State-wide office have some minimal measure of broad based numerical and geographical support and imposes no excessively prohibitive burden on a candidate seeking a position on a primary ballot. In light of the rationally based legitimate State purpose served by subdivision 5 of section 136, it is inappropriate to conclude, as does the dissenter, that the distribution requirement is "irrelevant”. It can be acknowledged that, because the number of enrolled party members does and probably always will vary widely from one Congressional district to another, the strict application of the one man-one vote principle announced by the Supreme Court would strike down the criteria of subdivision 5 of section 136. The arithmetic application appears to be present. The Supreme Court, however, has said that the one man-one vote equation is not mechanically or *351 automatically to be applied at all levels of government or to every aspect of the electoral process. As indicated above, strong and sound reasons of electoral polity support the exaction of a broad geographical representation. Because this is so, and because of the near practical impossibility of implementing a precise one man-one vote rule in party nominating procedures, we do not think the Supreme Court would strike down the considered enactment of our State Legislature in subdivision 5 of section 136. In our analysis full respect for the articulation of the Supreme Court rule to date does not require us to do so.
Thus, we find that the present version of the statute does not suffer from the infirmity of the former version of subdivision 5 of section 136 invalidated in Socialist Workers Party v Rockefeller (314 F Supp 984, affd 400 US 806) since, unlike counties, the State’s Congressional districts all have nearly equal populations. While, as noted, there are differences in the numbers of registered Democrats among the various districts, because of shifting registration patterns the present version of the statute is probably the most feasible means of implementing a legitimate State policy and at the same time accommodating the mandate of the one man-one vote principle as articulated by the Supreme Court (compare Moore v Ogilvie, 394 US 814; Socialist Workers Party v Rockefeller, supra). For example, absolute precision in adherence to an infallible one man-one vote principle would make it necessary to allocate a separate district system for each political party and within the political party for each election year.
Our consideration of appellant’s challenge to the constitutionality of subdivision 2 of section 131 of the Election Law under the Federal Constitution is, of course, precluded by reason of the res judicata effect we must accord the unanimous determination of the three-Judge Federal court that the claim did not present a "substantial constitutional question” (Moritt v Rockefeller, 346 F Supp 34, affd 409 US 1020). On the merits, however, we find no merit to his claim and hold that subdivision 2 of section 131 of the Election Law does not violate the one man-one vote principle, or the provisions of the New York State Constitution relied upon by petitioner.