## LIBERTARIAN PARTY OF VIRGINIA, et al.

v.

### Earl DAVIS, et al.

### Civ. A. No. 84–0437–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 6, 1984.

James J. Featherstone, Santarelli & Bond, Washington, D.C., Richard E. Gardiner, Springfield, Va., for plaintiffs.

Elizabeth B. Lacy, Deputy Atty. Gen., William J. Bridge, Marla L. Graff, Richmond, Va., for defendants.

## OPINION

WARRINER, District Judge.

Plaintiffs filed a complaint for declaratory and injunctive relief advancing the view that the application of Va.Code § 24.1–159 to their attempt to list Libertarian Party electors on the November presidential ballot violates plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

Plaintiffs consist of the Libertarian Party of Virginia and certain of its officers and adherents. They complain that the cited Code section violates their rights insofar as it requires at least 200 qualified voters from each congressional district in the Commonwealth to petition to have the names of Libertarian Party electors for president and vice president printed upon the official ballot to be used in the November presidential election. Plaintiffs also complain that their First and Fourteenth Amendment rights are infringed in that the 200 signatures must be witnessed by a qualified voter of the same congressional district as the qualified voter signing the petition.

The statute in question with the offending passages underlined is as follows:

Any group of qualified voters, equal in number to at least one-half of one percent of the number of voters registered in the Commonwealth as of January 1 of that year and including at least 200 qualified voters from each congressional district in the Commonwealth, not constituting a political party as defined in § 24.1–1, may have the names of electors selected by them, including one elector residing in each congressional district and two from the Commonwealth at large, printed upon the official ballot to be used in the election of electors for President and Vice-President by filing a petition so requesting with the State Board of Elections not later than noon of the seventy-fourth day before said election. Said petition, which shall be signed by said voters after January 1 of the year in which the election is held and contain their residence addresses, the signatures to which shall be witnessed by a qualified voter of the same congressional district whose affidavit to that effect is attached to said petition, shall set forth the names of the electors selected by such voters, the party name under which they desire the electors so selected to be listed on the ballot, and the names of the candidates for President and Vice-President for whom such electors are expected to vote in the Electoral College. Substitution of a different candidate for Vice-President maybe made by the candidate for President before the State Board of Elections certifies to the county

and city electoral boards the form of official ballot. In order to utilize a selected party name on the ballot, such group shall have had a state central committee composed of registered voters from each congressional district of the Commonwealth, a party plan and bylaws, and a duly designated chairman and secretary in existence and holding office for at least six months prior to filing the petition. The State Board of Elections may require proof that such group meets these requirements before permitting use of a party name on the ballot. Such party name shall not be identical with or substantially similar to the name of any political party qualifying under § 24.1–1 and then in existence.

In the event that a group of qualified voters meets the requirements set forth herein except that they cannot utilize a party name, the electors selected and the candidates for President and Vice-President shall be identified as "Independent." (Emphasis added.)

The quoted statute affects plaintiffs because plaintiffs do not constitute a "political party" as defined in § 24.1–1 of the Code of Virginia.[1] Not being a "political party," access to the ballot for electors of the Libertarian Party must be obtained via § 24.1–159.

Defendants, being members of the State Board of Elections, filed a motion to dismiss or in the alternative for summary judgment on 20 August 1984. The motion was accompanied by an appropriate brief to which plaintiffs have failed to respond within the time permitted by Local Rule 11(F). Treating the motion as a motion to dismiss, it will be GRANTED.

It must initially be borne in mind that the conduct of elections, both State and federal, was generally reserved to the States in the United States Constitution. See, *e.g.,*

U.S. Const. art. I, § 2, cl. 1; id. art. I, § 4, cl. 1; id. art. II, § 1, cl. 2; id. amend. X; id. amend XVII. Through congressional enactions and judicial decisions over the years, this reserved power has been seriously eroded. Nevertheless, it is the beginning point of an inquiry into the constitutionality of a State's election scheme.

It also must readily be acknowledged that States and their citizenry have a responsibility to see to it that elections are fairly, efficiently, and honestly conducted so that the will of the people can be expressed through the electoral process. The rules established by States to this end should not be invalidated by a judge, merely because they place burdens upon some person or group seeking a place upon the ballot. Free and untrammeled listing on the ballot would create chaotic elections and would result in meaningless results at the polls. States have an interest in presenting the citizenry with ballots between contestants who have at least a semblance of a chance at winning. While political campaigns have a time-honored and valuable office in providing dissident, splinter, and nascent political groups an opportunity to air their views, the essential purpose of an election is to elect public officials.

Without sensible rules precluding access, serious candidates for office enjoying substantial political support would find themselves awash in a sea of publicity-seekers, egotists, political weirdos, rich dilettantes, and assorted nuts with negligible or no public backing. To keep such off the ballot is not to deprive them of their First Amendment rights. It merely is to reserve the ballot for the serious purpose it is intended to serve.

■ The Libertarian Party of Virginia appears to be a serious political party with

---

**1.** "Party" or "political party" shall mean an organization or affiliation of citizens of the Commonwealth which, at the last preceding statewide general election, polled at least ten percent of the total vote cast for the office filled in that election by the voters of the Commonwealth at large. Such organization or affiliation of citizens shall also have a state

central committee and a duly elected chairman which have continually been in existence and holding office for the six months preceding the filing of a nominee;

Plaintiffs allege that their Party did not poll the requisite 10% of the vote in the immediately preceding statewide election.

a definite program which has attracted widespread, though thin, support throughout the country. Nevertheless, its access to the ballot is regulated under the statutes not by its seriousness nor by its program or platform. Access is limited by "content neutral" numerical and geographic requirements which are applicable alike to all political groups, other than "political parties"[2] which have demonstrated substantial public acceptance.

With this preamble, I will turn to the case law dealing with plaintiffs' complaint. *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971) predated the candidacy of John Anderson[3] but on the basis of the research I have done its holding and reasoning has never been questioned or overruled. I believe it still states the law applicable to this complaint. Fortson counseled that States should not impose "suffocating restrictions," 403 U.S. at 438, 91 S.Ct. at 1974, on those who seek to be listed on the ballot and that the system of access must not be merely theoretically open. As a practical matter the obstacles must be surmountable. 403 U.S. at 439, 91 S.Ct. at 1974. Fortson recognized, however, that the differences between established political parties and political groups seeking to become established call for different treatment under election laws. 403 U.S. at 441–42, 91 S.Ct. at 1975–76.

As an overall observation, the Georgia law at issue in Fortson is similar to but is, perhaps, more protective of the ballot than the Virginia statute. The Georgia law having passed constitutional muster, the Virginia law must succeed.

Turning to the specific points, plaintiffs decry the requirement under § 24.1–159 that "the signatures ... shall be witnessed by a qualified voter of the same congressional district [as the person signing the petition]." This requirement obviously gives some assurance that names appearing on the petition are genuine, not spurious. The witness takes oath to that fact and experience has shown that many people take their oaths seriously. Thus the requirement is a practical means of reinforcing compliance with the statute. More burdensome assurances were recently found to pass constitutional muster in *Howlette v. City of Richmond, Virginia*, 485 F.Supp. 17, 28–29 (E.D.Va.1978), aff'd, 580 F.2d 704 (4th Cir.1978).

The added requirement that the witness be of the same congressional district as the person signing the petition may be of only marginal additional benefit in policing the election laws, but it does demonstrate that within each congressional district there is at least one "activist" sufficiently motivated to shoulder the burden of witnessing signatures. The burden is light and the required demonstration is consistent with the Commonwealth's legitimate concern that there be some indication of geographic as well as numerical support before devoting space on the ballot to a political aspirant.

With respect to the requirement that signatures must be obtained from each of the ten congressional districts in Virginia, *Udall v. Bowen*, 419 F.Supp. 746 (S.D.Ind. 1976) (three judge court), aff, mem., 425 U.S. 947, 96 S.Ct. 1720, 48 L.Ed.2d 191, dealt with the same requirement under Indiana law and found it constitutionally acceptable. Though the Supreme Court merely affirmed without opinion, such affirmation is precedent which this Court is bound to follow. *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975).

Though less binding as precedent, the fact that the Supreme Court in another case in accord with Udall dismissed an appeal for want of a substantial federal question, buttresses me in my view that the geographic requirement is not offensive to the federal Constitution. *Moritt v. Governor of New York*, 42 N.Y.2d 347, 397 N.Y. S.2d 929, 930, 366 N.E.2d 1285, 1287 (1977) appeal dismissed for want of substantial

---

**2.** See n. 1.

**3.** From my recollection of newspaper reports Anderson was extraordinarily successful in persuading judges to list his electors on the ballot.

federal question, 434 U.S. 1029, 98 S.Ct. 758, 54 L.Ed.2d 777.

If Georgia's scheme, approved in Fortson, is only arguably more stringent than Virginia's, the same cannot be said for the statute approved in *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). Ballot access rules much more preclusive than Virginia's there passed constitutional scrutiny. 415 U.S. at 743, 94 S.Ct. at 1285 (Brennan dissenting).

Time is short before the November election and if I am to be reversed to the benefit of plaintiffs I must reach a decision quickly so that a successful appeal may provide plaintiffs with something more than a Pyrrhic victory. Accordingly, on the basis of this hurried study of the pertinent Supreme Court opinions, I will dismiss the complaint forthwith.

While there appears to be no merit in the complaint I do not believe it to be objectively frivolous—though plaintiffs' failure to contest the motion to dismiss suggests plaintiffs may so conceive their case. Defendants' motion for counsel fees is DENIED.

An appropriate judgment shall issue.

And it is so ORDERED.