Douglas N. MERRITT, et al., Plaintiffs,

v.

William GRAVES, Secretary of State for the State of Kansas, Defendant.

No. 88–4093–R.

United States District Court, D. Kansas.

Dec. 12, 1988.

Ruben Jorge Krisztal, Overland Park, Kan., for plaintiffs.

Robert T. Stephan, Atty. Gen., Daniel P. Kolditz, Asst. Atty. Gen., Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Plaintiffs, who are members of the Libertarian Party of Kansas, challenge various provisions of the Kansas ballot access laws as unconstitutional. Plaintiffs contend that K.S.A. 25–303, 25–205, 25–216 and 25–3602 place unconstitutional burdens upon their voting and association rights as well as their equal protection rights in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. They seek declaratory and injunctive relief. This matter is presently before the court upon cross-motions for summary judgment. Having carefully re-

viewed the briefs, the court is now prepared to rule.[1]

■ This action was filed on May 5, 1988. In their complaint, plaintiffs sought a declaratory judgment concerning the challenged statutes and asked the court to direct the defendant to place their names on the ballot for the 1988 Kansas general election.[2] The general election has since passed, but we do not view this case as moot. This dispute is capable of repetition, yet evading review. *Grant v. Meyer,* 828 F.2d 1446, 1449 (10th Cir.1987), *aff'd,* —— U.S. ——, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1987). Accordingly, we shall proceed to decide the questions raised by the parties.

Following the filing of the complaint, defendant made an offer of judgment pursuant to Fed.R.Civ.P. 68 concerning Count I of the complaint. Defendant agreed to reduce the amount of signatures needed by plaintiffs to be placed on the ballot to 2,500. Plaintiffs accepted this offer of judgment. Accordingly, Count I has been resolved and no further discussion is necessary.

The remaining counts of plaintiffs' complaint are directed primarily at K.S.A. 25–303. Plaintiffs assert that various aspects of this statute violate their rights under the First and Fourteenth Amendments to the United States Constitution. This statute, with the offending portions underlined, reads as follows:

---

1. Plaintiffs originally sought a hearing in this case for the purpose of considering permanent injunctive relief. Prior to the hearing, they advised the court that the case could be considered on motions for summary judgment. Accordingly, the court cancelled the scheduled hearing. Plaintiffs filed their motion for summary judgment on July 20, 1988. Thereafter, defendant filed a motion to strike. In its motion, defendant argued that the plaintiffs' motion should be stricken because it failed to comply with Local Rule 206(c), in that plaintiffs failed to set forth a "concise statement of material facts" in their motion. Plaintiffs have not responded to this motion.

   Given the circumstances of this case, the court shall not grant defendant's motion. The issues here are essentially legal in nature. The facts noted by the plaintiffs during the course of their motion have little bearing on the issues to

be decided. Accordingly, defendant's motion to strike shall be denied.

2. Plaintiffs Douglas Merritt, Dan Reagan, Frank Kaul, John Foster and Blake Huber sought to have their names placed on the ballot for the 1988 Kansas general election. Plaintiffs Walter Lineberger and Mary Lou Lineberger sought to circulate nominating petitions on behalf of plaintiff Merritt. Reagan sought to be a candidate for the office of county clerk in Sedgwick County. Huber sought to be a candidate for the office of county commissioner in Shawnee County. Frank Kaul sought to be a candidate for the office of United States Representative from the Second Congressional District. Merritt and Foster sought to be candidates for the office of state representative for the 48th and 92nd legislative districts, respectively.

This section shall not apply to city and school elections, nor to election of other officers provided by law to be elected in April. All nominations other than party nominations shall be independent nominations. Independent nominations of candidates for any office to be filled by the voters of the state at large may be made by nomination petitions signed by not less than 2,500 qualified voters of the state for each candidate and in the case of governor and lieutenant governor for each pair of such candidates.

Independent nominations of candidates for offices to be filled by the voters of a county, district or other division less than a state may be made by nomination petitions signed by not less than 5% of the qualified voters of such county, district or other division voting for secretary of state at the last preceding general election for each candidate, and in no case to be signed by less than 25 voters of such county, district or division, for each candidate.

Independent nominations of candidates for offices to be filled by the voters of a township may be made by nomination papers signed by not less than 5% of the qualified voters of such township, computed as above provided, for each candidate, and in no case to be signed by less than 10 such voters of such township for each candidate.

The signatures to such nomination petitions need not all be appended to one paper, but each registered voter signing an independent certificate of nomination shall add to the signature such petitioner's place of residence and post-office address. All signers of each separate nomination petition shall reside in the same county and election district of the office sought. The affidavit of a qualified elector who resides in such county and election district or of the candidate shall be appended to each petition and shall contain, at the end of each set of documents carried by each circulator, a verification, signed by the circulator, to the effect that such circulator personally witnessed the signing of the petition by each person whose name appears thereon. The person making such affidavit shall be duly registered to vote. No such nomination paper shall contain the name of a candidate for governor without in the same such paper containing the name of a candidate for lieutenant governor, and if it does it shall be void. No person shall join in nominating more than one person for the same office, and if this is done, the name shall not be counted on any certificate.

Specifically, plaintiffs object to the following aspects of the statute: (1) the requirement that only registered voters may circulate petitions; (2) the requirement that circulators may obtain signatures only from other voters in their own county or election district; and (3) the requirement that each circulator must verify on each petition that he witnessed the signature of each person whose name appears on the petition.

Plaintiffs also contend that the combination of K.S.A. 25–303, 25–205, 25–216 and 25–3602 further negates their opportunity to participate in the electoral process. Along with the restrictions imposed by K.S.A. 25–303, plaintiffs point out that Kansas law requires that: (1) signatures for a nominating petition be gathered in only ninety days (K.S.A. 25–3602(e)); (2) a signer of a nominating petition may sign only one such petition for the same office (K.S.A. 25–205(3)); (3) the nominating papers containing all signatures must be filed at one time (K.S.A. 25–3602(a)); and (4) a signer of a nominating petition of one party may not participate in another party's primary (K.S.A. 25–216).

Defendant contends that all of the aforementioned restrictions serve one or more of the following interests of the state: (1) assuring that nominees whose names are placed on the general election ballot have at least a modicum of support; (2) assuring the validity of the signature on the nominating petition and the circulator of the petition and protecting against fraud; (3) regulating the number of candidates on the ballot; and (4) easing the administrative burden on election officials.

The law is well-settled that a state has the power to engage in "substantial regulation of elections ... if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). However, ballot access restrictions implicate the fundamental rights of association and voting protected by the First Amendment, as applied to the states through the Fourteenth Amendment. *Anderson v. Celebrezze,* 460 U.S. 780, 787, 103 S.Ct. 1564, 1569, 75 L.Ed. 2d 547 (1983). The Supreme Court has decided that the following functional test must be applied in cases such as this:

[A] court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is constitutional.

*Id.,* at 789, 103 S.Ct. at 1570.

Plaintiffs acknowledge that *Anderson* sets forth the standard to be applied by the court but, based on *Illinois Elections Board v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979), they contend that the court should require the state to adopt the least drastic means to achieve its ends. We reject this contention, as did the Tenth Circuit recently in *Rainbow Coalition of Oklahoma v. Oklahoma State Election Board,* 844 F.2d 740 (10th Cir.1988). There, the Tenth Circuit stated:

In *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979), the Court, in evaluating an equal protection challenge to a ballot access restriction, did require the state to establish a compelling interest and to use the least drastic means to achieve its goal. However, other and more recent Supreme Court cases have neither demanded a compelling state interest nor insisted that the state demonstrate it has achieved this end by the least restrictive means available. *See Munro v. Socialist Workers Party,* [479] U.S. [189], 107 S.Ct. 533, 538–39, 93 L.Ed.2d 499 (1986); *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *see generally* L. Tribe, [*American Constitutional Law* ] § 13–20, at 1107–10 [ (2d ed. 1988) ].

*Id.,* at 743 (footnote omitted). The Tenth Circuit then held that the aforementioned balancing test set forth in *Anderson* must be applied. *Id.* "The watchwords in balancing the state's interest against the interest of the citizen are whether the means adopted 'unfairly or unnecessarily' burden the citizens' political opportunity." *Baer v. Meyer,* 728 F.2d 471, 474 (10th Cir.1984) (citing *Anderson v. Celebrezze, supra,* 460 U.S. at 793, 103 S.Ct. at 1572).

Plaintiffs assert that the provision of K.S.A. 25–303 requiring that each nominating petition contain an affidavit from its circulator indicating that the circulator personally witnessed the signature of each person on the petition unnecessarily burdens them in their attempt to gain access to the ballot. Plaintiffs first contend that this requirement is costly because it requires travel to the site of a notary public and perhaps payment to the notary public for his services. Plaintiffs next assert that the requirement has an inhibiting effect on circulators because they will not want to attend to the "added chore of a trip to the courthouse." Plaintiffs suggest that an unwitnessed certification by each circulator would accomplish the state's goal to restrict fraud in the electoral process.

Defendant contends that the affidavit requirement of K.S.A. 25–303 serves to prevent election fraud. Defendant asserts that the affidavit requirement prevents

fraud by the signer of the petition as well as by the circulator of the petition. Defendant further argues that this requirement constitutes an insignificant burden on the plaintiffs.

■ Applying the standards established in *Anderson*, we find that the affidavit requirement of K.S.A. 25–303 passes constitutional muster. The state's interest in preventing election fraud is compelling, while the burden of this requirement upon the plaintiffs is minimal. The burdens imposed by this requirement are overstated by the plaintiffs. Plaintiffs suggest primarily that this requirement will be costly for them. We note initially that plaintiffs' assertions concerning potential costs are wholly speculative. Plaintiffs have failed to produce anything which suggests the costs of this requirement. The costs would appear to be negligible when one considers that the service of notarization is performed free of charge by each county election officer or election commissioner. In addition, plaintiffs have failed to produce any evidence that this requirement would have an inhibiting effect on circulators. Moreover, the mere possibility that this requirement may have some expense to the plaintiffs does not constitute an equal protection violation. "That minor parties must incur some expenses accumulating the necessary signatures to qualify for the ballot does not constitute an equal protection violation." *Libertarian Party of Florida v. State of Florida*, 710 F.2d 790, 794–95 (11th Cir.1983), *cert. denied*, 469 U.S. 831, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984) (citing *American Party of Texas v. White*, 415 U.S. 767, 793–94, 94 S.Ct. 1296, 1312, 39 L.Ed.2d 744 (1974)). In sum, plaintiffs' arguments concerning the affidavit requirement of K.S.A. 25–303 must be rejected because they have made "little or no effort to demonstrate its impracticability or that it is unusually burdensome." *American Party of Texas v. White, supra*, at 787, 94 S.Ct. at 1309.

Plaintiffs also suggest that the affidavit requirement of K.S.A. 25–303 creates an anomaly in Kansas law because K.S.A. 25–3602(c) requires only "verification" by circulators of other petitions. K.S.A. 25–3602(c) reads as follows:

> Every petition shall contain, at the end of each set of documents carried by each circulator, a verification, signed by the circulator, to the effect that the circulator personally witnessed the signing of the petition by each person whose name appears thereon. The circulator of a petition shall be duly registered to vote and a resident of the political or taxing subdivision in which the election is sought to be held.

Plaintiffs apparently believe that the reference in K.S.A. 25–303 to an "affidavit" suggests a difference in the two statutes. Plaintiffs are simply mistaken in their interpretation of these statutes. Plaintiffs misunderstand the meaning of the term "verification." A "verification" is an affidavit confirming the truth of the matters covered by it. *D.J. Fair Lumber Co. v. Karlin*, 199 Kan. 366, 430 P.2d 222, 225 (1967). The requirements of K.S.A. 25–303 and K.S.A. 25–3602(c) are identical in this respect. Both require a circulator to provide a verification at the end of the documents carried by the circulator indicating that the circulator personally witnessed the signings of the petition.

Affidavit requirements for circulators have been imposed by other states and upheld as constitutional by the courts that have considered them. *See Libertarian Party of Virginia v. Davis*, 591 F.Supp. 1561 (E.D.Va.1984), *aff'd*, 766 F.2d 865 (4th Cir.1985); *Johnson v. Cuomo*, 595 F.Supp. 1126 (N.D.N.Y.1984). In *Davis*, the district court had this to say about this requirement: "This requirement obviously gives some assurance that names appearing on the petition are genuine, not spurious. The witness takes oath to that fact and experience has shown that many people take their oaths seriously. Thus, the requirement is a practical means of reinforcing compliance with the statute." 591 F.Supp. at 1564.

In sum, we find that the affidavit requirement of K.S.A. 25–303 is constitutional. The burden upon the plaintiffs is mini-

mal, and the interest of the state in preventing fraud is compelling.

Plaintiffs next contend that the requirement of K.S.A. 25–303 that circulators may only obtain signatures from other voters in their own county or election district is unconstitutional. Plaintiffs rely on *West Virginia Libertarian Party v. Manchin*, 165 W.Va. 206, 270 S.E.2d 634 (1980) and *The Coalition For Political Honesty v. Illinois State Board of Elections*, No. 81 C 2718 (N.D.Ill., unpublished, 4/23/82) for support of this argument. Along with this argument, plaintiffs argue that the requirement of K.S.A. 25–303 that only registered voters may circulate petitions is also unconstitutional.

The defendant contends that these requirements serve to prevent fraud and ease the administrative burden on election officials. Defendant believes that the burden imposed by these requirements is a light one. He asserts that the cases relied upon by plaintiffs are distinguishable and cites *Libertarian Party of Nebraska v. Beermann*, 598 F.Supp. 57 (D.Neb.1984) in support of his contentions.

■ Before we address the merits of plaintiffs' argument, we must clear up one misconception that pervades plaintiffs' brief. Plaintiffs believe that the county of residence requirement restricts circulators to obtaining signatures only in the county or election district where they reside. This interpretation is incorrect and is not mandated by the language of the statute. K.S.A. 25–303 requires only that signers of nominating petitions shall reside in the same county and election district of the office sought. This requirement does not restrict circulators to their home county and election district. The circulators may seek signatures anywhere in the state, but the signers must reside in the same county and election district as the circulators. This distinction is critical since we are considering the burdens placed on the plaintiffs by this legislation. Thus, the statute does not preclude the plaintiffs from obtaining signatures at the state fair, at shopping malls, or at other places where there are large gatherings.

Having carefully reviewed the arguments of the parties and the various courts that have considered this issue, we are persuaded by the district court's opinion in *Beermann*. We are convinced that the cases cited by plaintiffs are distinguishable from the situation in Kansas for the same reasons that the Nebraska court distinguished them in *Beermann*. We concur with the following reasoning and conclusion from *Beermann:*

Plaintiffs' third point of complaint was the requirement that petition circulators must be registered voters of the state and residents and registered voters of the county in which they are circulating petitions. *See* 32–526(3). Plaintiffs contend that requiring persons soliciting petition signatures to be residents and registered voters of the county in which they are circulating petitions severely limits solicitation in public areas such as shopping malls or the state fair where large numbers of persons are easily approached and forces the petition drive to relative immobility. Both cases upon which plaintiffs rely, *West Virginia Libertarian Party v. Manchin*, [165 W.Va. 206] 270 SE.2d 634 (W.Va.1980), and *The Coalition for Political Honesty v. Illinois State Board of Elections*, No. 81 C 2718 (ND Ill. April 23, 1982) (unreported), can be distinguished from the situation in Nebraska. The magisterial districts in West Virginia were very small subdivisions of the state's counties. In ruling West Virginia's statute unconstitutional, the Supreme Court of Appeals recognized the difficulties attendant upon restricting circulators to the district in which they were residents and registered voters, (*West Virginia Libertarian Party* at 640–642). However, West Virginia also required that petition circulators be certified by state officials and receive identification cards prior to the circulation drive. This provision was upheld as a means of controlling fraud and misrepresentation in the solicitation process. *Id.* at 642–643. In the unreported Illinois case, some of the election districts were state-formed counties and some were

subdivisions of counties, the boundaries of which were unclear even to election officials. The Court, in removing the election district residency requirement, did uphold the provision which required petition circulators to be registered voters of the state.

"The requirement that circulators be registered voters appears to be the only procedure available to the state which might protect against the type of fraud described above [bogus solicitors misrepresenting themselves to reduce or damage competing parties].... [T]he Court is not convinced that the registration requirement is at all burdensome or that it infringes in any way the right to petition." *The Coalition for Political Honesty* at 19.

Since there is no provision for certification of solicitors in Nebraska, the requirement that petition circulators be registered voters of the State serves a compelling state interest to prevent misrepresentation and fraud by either the prospective new party or its political opponents. While Nebraska goes somewhat further in requiring solicitors to remain within county boundaries, this is not a prohibitive burden on petitioners. Even the court in West Virginia distinguished between the very small magisterial districts and the state's counties. All Nebraska voters can be expected to know the county in which they reside and short questioning by the solicitor would suffice to determine the potential signer's county of residence. Since the formation of a new party, by necessity, entails a large amount of time and effort, recruitment of a nucleus of supporters in counties in which petitions are being circulated serves to demonstrate both the seriousness of the party organizers and the distribution of support for the party ideals.

The Court finds, therefore, that there is a compelling state interest to prevent misrepresentation and fraud. It is reasonable that petition circulators as described in Section 32–526(3) be registered voters of the State of Nebraska and residents and registered voters in the county in which they are circulating petitions. It follows that each such provision is a valid requirement. The Court finds that the state has a legitimate reason for the requirement that the circulators be registered voters in the State of Nebraska in that residents should have a familiarity with, and the ability to ascertain by questions or otherwise, and to determine, whether the persons signing such a petition are or are not residents of such county.

*Id.*, at 64–65.

Plaintiffs have argued, in an effort to distinguish *Beermann*, that Kansas, unlike Nebraska, requires certification of its circulators. Once again, plaintiffs are incorrect. The certification referred to in *Beermann* was the certification required by the laws of West Virginia. As indicated in *Manchin*, West Virginia requires that all petition circulators be certified by state officials and receive identification cards prior to the circulation drive. This requirement was upheld by West Virginia as serving a substantial state interest "in assuring the integrity of the signature solicitation process." 270 S.E.2d at 634. Kansas laws have no such requirements. A circulator in Kansas need not pre-register with state or local officials or obtain an identification card prior to circulating a nominating petition. Thus, we do find that the plaintiffs have sufficiently distinguished *Beermann*.

The only restriction on the qualification of a circulator in Kansas is that he or she must be a registered voter. Plaintiffs also suggest that this restriction places an unconstitutional burden upon them. Again, we disagree. Plaintiffs have failed to cite any case that has found such a restriction unconstitutional. The court's research indicates that every court that has considered the issue has indicated that such a requirement is constitutional, even in those cases where the courts have applied a strict scrutiny standard to the restriction. *See, e.g., Libertarian Party of Nebraska v. Beermann, supra,* at 65; *The Coalition for Political Honesty v. Illinois State Board of Elections, supra,* slip op. at 19.

We find it necessary to point out another distinction concerning the Illinois case. In the Illinois case, the court concluded that the "strict scrutiny" standard should be applied based on *Illinois State Board of Elections v. Socialist Workers Party,* supra. As we have already detailed earlier in this opinion, the "strict scrutiny" test is not the standard that is applied today. A balancing test governs ballot access restrictions, not a "strict scrutiny" test. Accordingly, the Illinois case is of little persuasive value given that the court applied a much harsher standard than this court must apply.

Plaintiffs have also argued that the interest of the state in administrative efficiency should not be given any consideration. Plaintiffs suggest that the court in *The Coalition for Political Honesty v. Illinois State Board of Elections,* supra, rejected administrative ease as a valid state interest in ballot access cases. We disagree with the plaintiffs' contention for several reasons. First, courts have uniformly considered the administrative burden on states in ballot access cases. *See, e.g., Rainbow Coalition of Oklahoma v. Oklahoma State Election Board,* supra, at 747; *Tarpley v. Salerno,* 803 F.2d 57, 60 (2d Cir. 1986). Second, the court in the Illinois case found that the state's contention did not present a compelling state interest and thus was insufficient under the strict scrutiny standard. Again, we are not applying such a standard here. Under the balancing test, the administrative burden on the state is a factor to consider. While we would agree that the "county of residence" rule may be only of marginal benefit, we do believe that it protects some interests of the state and its burden on the plaintiffs is fairly insignificant. *See Libertarian Party of Virginia v. Davis,* supra, 591 F.Supp. at 1564, *aff'd,* 766 F.2d at 869-70.

Finally, we move to the last argument of the plaintiffs. Plaintiffs contend that the combination of K.S.A. 25-205, 25-216, 25-303 and 25-3602 negates their opportunity to participate in the electoral process in Kansas. Defendant counters that these statutes do not preclude such participation by plaintiffs but that they do operate to prevent fraud and frivolous candidacies.

We shall first examine the restrictions challenged by the plaintiffs. K.S.A. 25-205(3) provides a signer of a nominating petition may sign only one such petition for the same office. K.S.A. 25-216 requires a voter at a primary election, if challenged, to sign an affidavit indicating that he had not signed the nominating petition of a member of any other party or that of an independent candidate for any office for which candidates are seeking office in the primary election. Finally, K.S.A. 25-3602 places restrictions on the filing and format of nominating petitions. It requires that nominating petitions be filed at one time and that all signatures must be gathered within a ninety-day time period. K.S.A. 25-3602(c), (e).

Having carefully reviewed the aforementioned statutes, we do not find that the restrictions imposed by these statutes, either singularly or collectively, are unconstitutional. Each requirement serves a valid state interest. The requirement that a signer of a nominating petition may sign only one such petition for the same office serves the state interest in requiring that a candidate show he has a significant modicum of support and serves to preclude frivolous candidacies from appearing on the ballot. The provisions of K.S.A. 25-216 serve similar interests. The requirements concerning the filing of nominating petitions also serve the state's interest in requiring a candidate to show sufficient amount of support. These requirements further prevent fraud by decreasing the chances that a petition will be filed with invalid signatures. In light of all of the circumstances here, and in consideration of the fact that the plaintiffs need only obtain 2,500 signatures to gain access to the ballot, we do not find that these restrictions unfairly or unnecessarily burden the significant freedoms of association and expression implicated in this case. Thus, our application of the *Anderson* standards and weighing of the respective interests of the parties satisfies us that the aforementioned statutes repre-

sent reasonable regulations within constitutional bounds.

In sum, we shall grant defendant's motion for summary judgment. The court hereby grants summary judgment to the defendant on Counts Two, Three and Four of plaintiffs' complaint.

IT IS SO ORDERED.