In the Matter of PASQUALE J. CURCIO et al., Individually and as Residents of the County of Suffolk, Petitioners, v E. THOMAS BOYLE, as County Attorney of the County of Suffolk, et al., Respondents.

Supreme Court, Nassau County, April 18, 1989

### APPEARANCES OF COUNSEL

*Perry S. Reich* and *Steven M. Shapiro* for Pasquale J. Curcio and another, petitioners. *Martin Bradley Ashare* for David J. Wilmott, petitioner. *John J. Bower, Barry G. Saretsky* and

*Dennis Milton* for E. Thomas Boyle and another, respondents. *Brian McCaffrey* for Harold J. Withers, respondent. *Patrick K. Brosnahan, Jr.,* for George Wolf, respondent.

## OPINION OF THE COURT

HENDERSON W. MORRISON, J.

This is a special proceeding pursuant to CPLR article 78. The petitioners seek, *inter alia,* judgment annulling a determination of the respondent E. Thomas Boyle, County Attorney of Suffolk County. The County Attorney has determined that the petitioners' proposed amendment to the County Charter is illegal (Suffolk County Charter § C7-3B). The proposal, to be submitted to the voters in the next election, would substitute a system of weighted voting by a board of supervisors in place of the existing single-member-district Legislature.

The Suffolk County Charter authorizes amendment of that instrument by the voters by a process known as initiative and referendum. (Suffolk County Charter art 7.) The process is commenced by circulation of the proposal in an effort to obtain the signatures of no less than 1,000 eligible voters, including at least 50 from each of Suffolk's 10 towns. The petitioners filed their proposal together with the petitions with the clerk of the Suffolk County Legislature. The proposal was then forwarded to the respondent Boyle for review. By letter dated March 2, 1989, the County Attorney expressed pro forma approval of the proposal. He did not return the proposal and petitions to the clerk of the Legislature as required by the Charter. On March 28, 1989, the respondent Boyle returned the proposal and petitions to the clerk of the Legislature together with a letter outlining the reasons for his change of heart regarding the legality of the proposal. The second response came well after the expiration of the time period within which the County Attorney was required to act. (Suffolk County Charter § C7-3B.)

The basis for the revision of the County Attorney's opinion was, in part, the decision of the United States Supreme Court in a case entitled *Board of Estimate v Morris* (489 US —, 109 S Ct 1433). In the view of the County Attorney, that decision prohibits the adoption of the proposed system of weighted voting. It is also argued that the proposal would violate the Voting Rights Act of 1965, would allow insufficient time for adoption, and is too vague and indefinite for submission to the electorate. There is no indication as to how these tidbits previously escaped the attention of the County Attorney.

Apart from judicial scrutiny *(Matter of Leirer v Ashare,* 132 AD2d 700), a negative opinion by the Suffolk County Attorney brings the process of initiative and referendum to an end. Therefore, the petitioners commenced this proceeding. On its first appearance, I afforded the respondents time to answer the petition. Those answering papers have now been considered and raise additional arguments concerning the legality of the proposal. I further directed that the Board of Elections review the petitions to determine whether an adequate number of signatures had been obtained. This generated a dispute between the commissioners as to whether the required 50 signatures had been obtained from eligible voters in the Town of East Hampton. Additional memoranda have been filed with the court. The matter is now before me for determination.

I begin by noting certain ironic aspects of the respondents' position. The process of initiative and referendum is among the purest of democratic institutions for it allows the people's voice to be heard without intervening distortion. The respondents would rather silence that voice than risk the distortion they postulate as implicit in a weighted voting system. I take it as a given that the right to an equal voice in governance is no greater than the right to speak at all. I also find the position of the respondents with respect to the geographical adequacy of the petitions to be somewhat strained. Such a geographical requirement itself raises the equal protection claims which the respondents profess to embrace.

Before addressing the contentions of the parties, I must for the sake of clarity indicate what is not at issue here. The debate over the merits of weighted voting as opposed to single-member districts of equal population is a legitimate subject of comment by legal scholars and the press and public. *(See,* Newsday, Apr. 5, 1989, at 64; Apr. 9, 1989, at 11.) It may well be that the residents of Suffolk County are satisfied with the operations of their Legislature. It is also possible that with the experience of some years, the residents might prefer a replacement. That is most preeminently a political question about which I express no opinion, as it is not my place to do so. The adherents of change and those of the status quo must plead that case in the forum of public opinion.

What this case does address, and this only, is the determination of the County Attorney that the petitioners' proposal is illegal and for that reason an unfit subject of public debate and decision.

I turn now to the specific objections raised by the County Attorney in his opinion of March 28, 1989. In doing so, I must indicate that since the natural consequence of the County Attorney's opinion is to deny the voters of Suffolk County an opportunity to vote on a matter of such consequence as their form of government, such a determination can only be sustained where the proposal is clearly illegal. Any presumption of validity afforded the opinion of the County Attorney must yield to the people's right to be heard. I need not assess the legality of the form of governance ultimately adopted under the proposal. At this stage, my inquiry is limited to a determination as to whether the proposal is, on its face, illegal.

The County Attorney's suggestion that a weighted voting system must, of necessity, effect a dilution of minority voting in violation of the Voting Rights Act is wholly undocumented, and it is conceded that the compilation of such documentation, if possible at all, would be time consuming. The mere suggestion of a violation, standing alone, is insufficient to arrest the initiative and referendum process at birth. The claim that the proposal would allow for insufficient time to prepare a plan goes to the merits of the proposal, not its legality. I am advised by the petitioners' counsel that the arguments concerning the specificity of the plan have been addressed and rejected. *(Leirer v Ashare,* 132 AD2d 700, *supra.)* Since I am unable to independently confirm this representation within the time constraints imposed by the nature of this proceeding, and since counsel was a party to those proceedings I will rely on his representation.

The remaining argument raised by the County Attorney's letter is that the proposal for weighted voting violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. *(Reynolds v Sims,* 377 US 533.)* In this view, the County Attorney relies on the case of *Board of Estimate v Morris,* noted earlier. (489 US —, 109 S Ct 1433, *supra.)* The petitioners argue that weighted voting has previously withstood claims that it is unconstitutional and that authority remains controlling. *(Franklin v Krause,* 32 NY2d 234, *appeal dismissed* 415 US 904; *Bechtle v Board of Supervisors,* 81 AD2d 570, *affd* 54 NY2d 674; *League of Women Voters v Nassau County Bd. of Supervisors,* 737 F2d 155, *cert denied sub nom. Schmertz v Nassau County Bd. of Supervisors,* 469 US 1108.)* Therefore, the opinion of the County Attorney can only stand if it can be said with certainty that the cited cases are no longer the law.

I have reviewed the opinion of Justice White in the *Board of Estimate* case *(supra)* at length. It does not, by its terms, indicate that there the voting power of each elected official closely approximates the proportion of the total population which elects that official. In fact, weighted voting was one of the alternatives considered by the lower courts in the *Board of Estimate* case. *(Morris v Board of Estimate,* 647 F Supp 1463, 831 F2d 384.)* The Supreme Court did not address the constitutionality of these alternatives. *(Board of Estimate v Morris,* 489 US — —, n 11, *supra,* 109 S Ct 1433, 1443, n 11, *supra.)*

The respondents argue that the New York Court of Appeals, in sustaining a system of weighted voting in *Franklin v Krause* (32 NY2d 234, *supra),* relied on the so-called Banzhof Index now rejected by the United States Supreme Court. The phrase conjures up an image of tweedy academia. I do not so read *Franklin.* Rather, the analysis in *Franklin* is based upon a population analysis *(Abate v Mundt,* 403 US 182), testing whether the voters in each district are afforded as nearly an equal voice in government as possible. To the extent that *Franklin* addresses the question of the decisiveness of a vote, it does so in connection with the population patterns of the plan there considered. The proposal considered here does not have the same demographic characteristics. The references in the proposal to *Iannucci v Board of Supervisors* (20 NY2d 244) and *Franklin v Krause (supra)* are qualified by the reference to existing law at the time of implementation. Further, the proposal recites as the essential criteria a parallelism between population and voting power, in short, a mathematical analysis of population.

Since I cannot conclude that the Supreme Court has expressly or by necessary implication departed from its previous position on weighted voting, I cannot disregard the holding of the Court of Appeals in *Franklin v Krause (supra). (League of Women Voters v Nassau County Bd. of Supervisors,* 737 F2d 155, *supra.)* While I appreciate the respondents' argument that the holding in *Franklin v Krause* should be reconsidered, that duty appropriately falls to its authors, or to those who have legal capacity to review its wisdom. That does not, I should think, include the County Attorney or myself.

The respondents argued for the first time before me that the proposal violated section 10 of the Municipal Home Rule Law. (Municipal Home Rule Law § 10 [1] [ii] [a] [13] [f].) The timing is irrelevant since the legality of the proposal is not a waivable

proposition. Section 10 proscribes any effort to restructure a local legislative body more than once each decade commencing with 1970. A decade is a 10-year period beginning with a year ending in zero. (Webster's Third New International Dictionary 583.) The districts comprising the Suffolk County Legislature were altered last in 1981, an act which constitutes a restructuring within the meaning of the Municipal Home Rule Law. The proposed Charter amendment can take effect, if at all, no earlier than January of 1990. It therefore falls outside the temporal limitation of the Municipal Home Rule Law. No more expansive reading of the statute would appear warranted since it divests local government of the power to restructure even to cure inequities.

I turn now to the final argument of the respondents. The respondent Wolf has challenged the validity of 13 of the signatures submitted by the petitioners from eligible voters in the Town of East Hampton. This, of necessity, brings into consideration the validity of the geographical distribution requirement from an equal protection standpoint. The respondents who argue so vociferously for the equality of representation find such concepts wholly foreign to the petition process. I do not agree, and for reasons beyond logical consistency.

Rigid formulas of geographical distribution were considered and rejected in connection with nominating petitions in a case entitled *Socialist Workers Party v Rockefeller* because they overweighted and overvalued the votes of those living in less populated counties *(Socialist Workers Party v Rockefeller,* 314 F Supp 984, *affd without opn* 400 US 806; *see also, Moritt v Governor of State of N. Y.,* 42 NY2d 347, *appeal dismissed* 434 US 1029). The respondents argue the equal protection guarantees are inapplicable to the petition process utilized in connection with initiative and referendum, citing *Lockport v Citizens for Community Action* (430 US 259). In that case, Justice Stewart sustained a differential voting requirement in connection with the adoption of the Niagara County Charter (Municipal Home Rule Law § 33 [7]). The court held that one man, one vote principles "are of limited relevance * * * in analyzing the propriety of recognizing distinctive voter interests in a 'single shot' referendum" (430 US 259, 266, *supra).* However, the propriety of a differential voting requirement was based upon a demonstration that the proposal would have a disproportionate impact on an identifiable group of voters. The existence of such a consideration has not been demonstrated here. More importantly, the differential voting requirement

assumes that a referendum will be held, which is precisely the issue here. It is one thing to recognize the interests of local government units. It is quite another thing to overvalue the political power of the residents of a given unit to the point that they hold a veto power over the right of their brethren to vote at all. The point is aptly illustrated here where the citizens' right to initiative and referendum turns on the validity of the signatures of 13 voters from the Town of East Hampton.

Upon adoption of the Suffolk County Charter, the citizens reserved the right to alter their government by initiative and referendum. This is a right not to be lightly disregarded. In rejecting a geographical requirement for signatures for the formation of a party, the Supreme Court held that—

"By limiting the choices available to voters, the State impairs the voters' ability to express their political preferences. And for reasons too self-evident to warrant amplification here, we have often reiterated that voting is of the most fundamental significance under our constitutional structure. * * *

"When such vital individual rights are at stake, a State must establish that its classification is necessary to serve a compelling interest." *(Illinois Elections Bd. v Socialist Workers Party,* 440 US 173, 184.)

The cited case further indicates even in the case of a compelling State interest, the State is required to adopt the least drastic means necessary to achieve its ends. While I can posit the desirability of geographic diversity, the means to insure such diversity must, at a minimum, comport with constitutional guarantees where the right to vote is at issue. The geographical requirement contained in section C7-3 of the Suffolk County Charter does not and to that extent only, the section is unconstitutional.

The petitioners are entitled to judgment vacating the determination of the Suffolk County Attorney and declaring that the proposal is legal and proper for purposes of a Charter amendment. The petitioners are also entitled to judgment declaring that the petitions as filed satisfy the requirements of the Suffolk County Charter. (Suffolk County Charter § C7-3A.) It is so ordered. Since the proposal has already been referred to the clerk of the Suffolk County Legislature and the Board of Elections, the matter is now before the County Legislature for consideration (Suffolk County Charter § C7-3D), subject to appellate direction. In anticipation of such review, I will sever

and continue the claims between the respondents Withers and Wolf for the purpose of conducting a hearing on the challenge to the petitions. This will afford the Appellate Division, Second Department, a complete record should they find my analysis of the geographic requirements erroneous.

The respondents Wolf and Withers shall appear at I.A.S. Part 15 on April 25, 1989, at 9:30 A.M., and produce all records necessary for review of that portion of the petition which has been challenged.