REQUESTED BY: Secretary of State Scott Moore
Introduction
You have requested an Attorney General's Opinion concerning the constitutionality of Neb. Rev. Stat. § 32-1303(2). This statute regulates the circulation of recall petitions. Specifically, you have inquired as to the status of this statute in light of the court's decision in Bernbeck v. Moore,936 F. Supp. 1543 (D.Neb. 1996).
Shortly after your opinion request was made, the United States Court of Appeals for the Eighth Circuit affirmed theBernbeck decision. Bernbeck v. Moore, ___ F.3d ___, 1997 WL 629238 (8th Cir. 1997). In addition, the Tenth Circuit Court of Appeals recently addressed the validity of a Colorado statute requiring initiative and referendum circulators to be registered voters. American Constitutional Law Foundation, Inc. v. Meyer,120 F.3d 1092 (10th Cir. 1997). Therefore, we will examine Neb. Rev. Stat. § 32-1303(2) in light of all these decisions.
Nebraska's Recall Petition Statute
Section 32-1303(2) requires that circulators of recall petitions be registered voters. The statute specifically provides:
 Petition circulators shall conform to the requirements of sections 32-629 and 32-630. Each circulator of a recall petition shall be a registered voter and qualified by his or her place of residence to vote for the office in question on the date of the issuance of the initial petition papers.
Neb. Rev. Stat. § 32-1303(2) (Cum.Supp. 1996) (emphasis added).
No reported court decision has examined this specific Nebraska statute. As a general rule of statutory construction, a statute is presumed valid. Callan v. Balka, 248 Neb. 469, 481,536 N.W.2d 47, 54 (1995). However, the validity of Section32-1303(2)'s requirement that recall petition circulators be registered voters has clearly been called into question by recent decisions from three courts.
The Bernbeck Decision
The U.S. District Court for the District of Nebraska examined Nebraska's voter registration requirement for initiative petition circulators in Bernbeck v. Moore, 936 F. Supp. 1543 (D.Neb. 1996). Because of its importance to the issue at hand, we will set forth relevant portions of the District Court's decision at length:
 As in Meyer [v. Grant 486 U.S. 414, 108 S.Ct. 1886 (1988)], I find and conclude that the statutory voter-registration and related 30-day-waiting-period restrictions on petition circulators reduce the "available pool of circulators," 486 U.S. at 419, 108 S.Ct. at 1890, and "restrict political expression in two ways." Id. at 422-23, 108 S.Ct. at 1892.
 First, the restrictions "limit [ ] the number of voices who will convey [the organizer's] message and the hours they can speak and, therefore, limit [ ] the size of the audience." Id. at 422-23, 108 S.Ct. at 1892.
. . .
 Second, the restrictions "make [ ] it less likely that [the organizers] will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion.
. . .
 While Nebraska law gives the right to sign petitions to those who are registered to vote (at the time the petitions are turned in) and that restriction is not challenged here, Nebraska's constitution gives the right to circulate petitions to the "people," without any limitation on whether they are registered to vote or residents of Nebraska. Neb. Const. art. III, §§ 1, 2, 4.
 Thus, there is no "compelling governmental interest" in preventing someone like Dobrovolny, a rancher from remote Atkinson, Nebraska from hiring nonvoters (wherever their residence) to help him circulate petitions. The asserted governmental interest is not "compelling" because Nebraska's "self-executing" constitution imposes no such limitation on Nebraskans like Dobrovolny or petition circulators in general. And, as indicated earlier, the Nebraska legislature has no legitimate power to limit the state constitutional right to the initiative process.
. . .
 Circulating a petition is much more like political campaigning than it is voting for two reasons. First, a circulator must persuade a Nebraskan to place his or her signature on a petition, and even if the Nebraskan places his or her signature on the petition, that signature is not counted for any purpose until an impartial election commissioner verifies the signature and determines the signer is a registered voter. Second, the intent of the petition circulator is to persuade the signer that the measure is worthy of later consideration at the polls, and the signer knows that he or she may sign a petition yet vote against the measure when it comes time to cast a ballot. Thus, what petition circulators primarily do is promote discussion of political issues by and among Nebraskans.
 In no other case are Nebraskans who advocate or oppose electoral measures prohibited from hiring or recruiting people to help get their message out merely because a prospective worker or volunteer is not registered to vote.
 . . . Prevention of signature fraud is indeed a compelling governmental interest. Meyer, 486 U.S. at 426, 108 S.Ct. at 1894. However, there is no evidence that registered voters are less likely to engage in signature fraud than nonvoters, and in any event, other provisions of Nebraska law are adequate to prevent signature fraud without imposing a voter-registration requirement.
. . .
 In summary, as in Meyer, Nebraska has many devices for preventing signature fraud short of requiring petition circulators to be registered voters. Such devices include, but are not limited to, making signature fraud a crime, requiring that each signature be verified by election officials, requiring warnings on petitions, and requiring circulator affidavits. Therefore, in the absence of proof to the contrary (and there is none), these "provisions seems adequate to the task of minimizing the risk of improper conduct in the circulation of a petition, especially since the risk of fraud or corruption, or the appearance thereof, is more remote at the petition stage of an initiative than at the time of balloting." Meyer, 486 U.S. at 427, 108 S.Ct. at 1895.
Bernbeck v. Moore, 936 F. Supp. at 1561-1566. Thus, the District Court concluded that Nebraska's voter registration requirement for initiative and referendum petition circulators violated the U.S. Constitution.
This decision was recently affirmed by the United States Court of Appeals for the Eighth Circuit. Bernbeck v. Moore, ___ F.3d ___, 1997 WL 619238 (8th Cir. 1997). The Eighth Circuit stated, "We agree with the district court that even if the interests advanced by the State to support the registration requirement are compelling, the law is not narrowly tailored to achieve those interests." Id. at 3.
The Colorado Decision
In a case with many similarities to Bernbeck, a Colorado statute requiring initiative and referendum circulators to be registered voters was also recently invalidated. AmericanConstitutional Law Foundation, Inc. v. Meyer, 120 F.3d 1092
(10th Cir. 1997).[1] The Colorado statute provided that "No section of a petition for any initiative or referendum measure shall be circulated by any person who is not a registered elector and at least eighteen years of age at the time the section is circulated." Id. at 1100 (quoting C.R.S.A. § 1-40-112(1)). In validating the voter registration requirement the Tenth Circuit stated,
 The registration requirement has a discriminatory effect. It bars persons who are not registered voters from circulating petitions, thereby excluding that group of persons from participating in core political speech. See Meyer, 486 U.S. at 421-22, 108 S.Ct. at 1981-92. Colorado acknowledges there are at least 400,000 qualified but unregistered voters in the state. The mandatory exclusion of unregistered circulators also limits the number of voices to convey the proponent's message, limiting the audience the proponents can reach and making it less likely they will be able to gather the required number of signatures to place a measure on the ballot. Cf. Meyer, 486 U.S. at 422-23, 108 S.Ct. at 1892-93. Consequently, we apply exacting scrutiny.
 Colorado fails to identify a compelling state interest to which its registration requirement is narrowly tailored. The state attempts to justify the registration requirement by arguing it has a compelling interest in ensuring circulators are residents so the regulatory system may be more easily policed (the secretary's authority to issue subpoenas to circulators does not extend beyond Colorado's borders) and circulators who violate the law may be more easily prosecuted. Even if we assume the state's potentially compelling interest in preserving the integrity of its elections requires all circulators to be residents, a question we need not decide, the registration requirement is not narrowly tailored to ensure that circulators are residents. Clearly, a large number of Colorado residents are not registered voters. The state's asserted interest could be more precisely achieved by simply imposing a residency requirement for circulators. Because Colorado's requirement that circulators be registered voters is not narrowly tailored to a compelling state interest, we find it unconstitutionally impinges on free expression and reverse the district court.
Id. at 1100 (emphasis added).[2]
 Recall vs. Initiative
The Bernbeck and American Con. Law v. Meyer decisions, then, clearly call into question the validity of Neb. Rev. Stat. § 32-1303(2) which also requires petition circulators to be registered voters. There is, however, a distinction between the voter registration requirement which was at issue in Bernbeck
and American Con. Law and that contained in Neb. Rev. Stat. § 32-1303(2) which should be considered. Bernbeck and AmericanCon. Law dealt with initiative petitions whereby citizens exercise their constitutional right to participate in the legislative process. Section 32-1303(2), on the other hand, deals with the recall of elected officials. The question, then, is whether the distinction between initiative petition circulation and recall petition circulation affects the ability of the State to regulate the process by requiring recall petition circulators to be registered voters. The remainder of this section will explore this distinction and its constitutional implications.
Initiating legislation is clearly different from recalling an elected official. The question is whether this difference is constitutionally significant in the context of the regulation of petition circulators. We note that in Bernbeck, the District Court distinguished the circulation of initiative petitions from the circulation of petitions seeking ballot access for new political parties. Bernbeck, 936 F. Supp. at 1565. The District Court's discussion on this point was in response to arguments from counsel for the Secretary of State and also from a previous Attorney General's Opinion discussing the validity of voter registration requirements for circulators and citing three cases upholding such voter registration requirements.[3]
The District Court in Bernbeck, however, declined to adopt this reasoning. In doing so, the Court discussed the distinction between initiative petition circulation and the circulation of petitions seeking ballot access.
 Finally, Moore asserts I should follow two ballot-access cases that found voter-registration requirements for petition circulators valid. See Merritt v. Graves, 702 F. Supp. 828 (D.Kan. 1988) (voter-registration requirement for circulator of petition to put political party on ballot was constitutional); Libertarian Party of Neb. v. Beermann, 598 F. Supp. 57 (D.Neb. 1984) (portion of statute governing formation of new political parties requiring petition circulators to be registered voters was constitutional). I decline to follow those cases for three reasons.
 First, the cases cited by Moore are categorically different from this case. Both cases relied upon by Moore are so-called "ballot-access" cases where a political party sought access to the ballot. Ballot access cases are very different from cases involving initiative (or referendum) petitions where the objective is not to help one political party at the expense of another, but to change the law or propose a new law.
 In both Merritt and Libertarian Party, the courts recognized it was necessary to require a circulator to be a registered voter because of the unique nature of ballot-access cases. Both courts reasoned that requiring a circulator to be a registered voter, therefore making the individual easier to identify as a past supporter of a particular political party, reduced the likelihood that a bogus circulator (a Republican party stalwart for example) would circulate a third-party petition (on behalf of the Libertarian party perhaps) in order to harm yet another party (possibly the Democrats). Merritt, 702 F. Supp. at 833-34; Libertarian Party, 598 F. Supp. at 64-65. No such concern exists with regard to initiative or referendum petitions.
Bernbeck, 936 F. Supp. at 1565 (emphasis added).
Overriding Free Speech Considerations
Although the District Court identified a distinction between initiative petitions and other petitions (which could possibly be used to defend § 32-1303(2)), the Court then went on to give two additional reasons why the voter registration requirement at issue in Bernbeck was invalid despite the Merritt andLibertarian Party cases:
 Second, although it was decided shortly after Meyer [v. Grant], Merritt made no mention of the Meyer case, and Libertarian Party was decided prior to Meyer. As a result, neither judge had the benefit of Meyer.
 Third, Merritt refused to apply "strict scrutiny," 702 F. Supp. at 835, and while it is not entirely clear what standard was applied in Libertarian Party, if "strict scrutiny" was used, it was a much-relaxed version of it. 598 F. Supp. at 65. As a result, neither judge applied the rigorous scrutiny Meyer [v. Grant] demands.
Id.[4]
Thus, although it would be possible to make a distinction between recall petition circulation and initiative petition circulation, the distinction does not overcome all theFirst Amendment problems identified by the District Court. We conclude that in light of the constitutional problems identified by the District Court, as well as the Eighth Circuit's affirmation of the District court's reasoning, Neb. Rev. Stat. § 32-1303(2) is doomed to the same fate as the initiative petition circulator registration requirement.
As in Bernbeck, the circulation of a recall petition "involves the type of interactive communication concerning political change that is appropriately described as `core political speech.'" Bernbeck, ___ F.3d ___, 1997 WL 619238 at 2. The registration requirement limits the number of voices who will convey the recall message, and the size of the audience they can reach. Id.
In addition, a court would likely find that other anti-fraud protections are adequate to prevent fraud without a voter registration requirement. Id. at 3. Finally, we take due note of the Eighth Circuit's reference to the fact that nonregistered voters can participate in political campaigns, including campaigns opposing recall efforts. Id. Therefore, a court would not likely find Neb. Rev. Stat. § 32-1303(2) to be narrowly tailored to serve a compelling State interest, and would declare the statute unconstitutional as violating theFirst Amendment of the Constitution of the United States.
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved By:
Don Stenberg
Attorney General
[1] This recent Tenth Circuit decision must not be confused with the precedent-setting 1988 U.S. Supreme Court decisionMeyer v. Grant which is the basis for the Bernbeck decision. Meyer was a party in both cases.
[2] The Tenth Circuit upheld the minimum age requirement for petition circulators as "a neutral restriction that imposes only a temporary disability." Id. at 1101.
[3] The Attorney General's Opinion in question is Op. Att'y Gen. No. 95031 (April 19, 1995), which states:
 The Attorney General's Office has already successfully defended the general requirement that petition circulators be registered voters. In Clean Environment Committee v. Beermann, Docket 486, Page 94 (Lancaster County District Court 1992), the plaintiffs alleged that the requirement that circulators be registered voters violates Neb. Const. art. III, § 3 and the First Amendment of the U.S. Constitution. The Lancaster County District Court held, however, that
 The requirement that petition circulators be registered voters facilitates fraud prevention in concrete and substantive ways. Voter registration ensures a readily available and important means for keeping track of petition circulators. It also provides a handwriting sample for use in determining the validity of circulator signatures. When the Secretary of State or a county clerk or election commissioner has a question about some aspect of the validity of a petition or petition signature, he or she can locate the circulator by use of the voter registration records.
 (Order at 5). The court also found the registration requirement does not violate the First Amendment. The Court held, "The registered voter requirement is a narrowly tailored requirement which serves the compelling state interest to prevent fraud and ensure the integrity of the initiative process without unduly burdening the right to free speech." (Order at p. 6). The district court's decision was consistent with prior federal court decisions including Libertarian Party v. Beermann, 598 F. Supp. 57, 65 (D.Neb. 1984), in which the court stated, "there is a compelling state interest to prevent . . . fraud. It is reasonable that petition circulators . . . be registered voters of the State of Nebraska. . . ." See also Merritt v. Graves, 702 F. Supp. 828 (D.Kan. 1988) (upholding Kansas' requirement that petition circulators be registered voters).
Id.
[4] The District Court also stated, in a footnote, "For essentially the same reasons, I also decline to follow an unpublished opinion of the Lancaster County, Nebraska, district court. See State of Neb., ex rel. Clean Env't Comm. v. Beermann, No. 486, at 94 (Sept. 21, 1992)." This was the third case cited in Op. Att'y Gen. No. 95031 and by the Secretary of State's counsel in Bernbeck.